Jahan C. Sagafi (State Bar No. 224887)
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile:  (415) 638-8810
Email: jsagafi@outtengolden.com

Adam T. Klein (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone:  (212) 245-1000
Facsimile:  (646) 509-2060
E-mail: atk@outtengolden.com

Jason R. Flanders (State Bar No. 238007)
Sarah M.K. Hoffman (State Bar No. 308568)
AQUA TERRA AERIS LAW GROUP
828 San Pablo Ave., Ste. 115B
Albany, CA 94706
Phone: (916) 202-3018
Email: jrf@atalawgroup.com
Email: smkh@atalawgroup.com

P. David Lopez (admitted *pro hac vice*)
Peter Romer-Friedman (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001
Telephone: (202) 847-4400
Facsimile: (646) 952-9114
E-mail: pdl@outtengolden.com
E-mail: prf@outtengolden.com

William Most (State Bar No. 279100)
LAW OFFICE OF WILLIAM MOST
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
Phone: (504) 509-5023
Email: williammost@gmail.com

*Attorneys for Plaintiffs and Proposed Class Members*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE-JULIETTE MOBLEY, DANIEL ADRIAN MANRIQUEZ, and VICTOR ONUOHA, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>          vs.<br><br>FACEBOOK, INC.,<br><br>    Defendant. | Case No. 16-cv-06440-EJD<br><br>**FIRST AMENDED COMPLAINT** |

1    Individual and Representative Plaintiffs Suzanne-Juliette Mobley, Daniel Adrian

2    Manriquez, and Victor Onuoha ("Plaintiffs"), on behalf of themselves and all others similarly

3    situated, allege, upon personal knowledge as to themselves and upon information and belief as to

4    other matters, as follows:

5                              **SUMMARY OF CLAIMS**

6         1.       This is a class action brought by Plaintiffs against Facebook, Inc. ("Facebook")

7    alleging violations of Title VII of the Civil Rights Act, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the

8    Fair Housing Act ("FHA"), 42 U.S.C. §3601, *et seq.*, the Equal Credit Opportunity Act, 15 U.S.C.

9    §1691, *et seq.* ("ECOA"), the Civil Rights Act of 1866, 42 U.S. C. §§ 1981 & 1982 ("Section

10   1981" and "Section 1982"), as well as the California Fair Employment and Housing Act, Cal. Gov.

11   Code § 12900, *et seq.* ("FEHA"), the California Unfair Competition Law, Cal. Bus. & Prof. Code

12   § 17200, *et seq.* ("UCL"), and the California Unruh Civil Rights Act, Cal. Civil Code § 51(b).

13        2.       With more than 191,000,000 users in the United States and over a billion users

14   worldwide, Facebook is one of the most popular web sites in the world for individuals to obtain

15   information of all kinds.  Facebook is also one of the most popular tools for businesses to recruit

16   applicants for employment, housing, and credit opportunities (the "Relevant Opportunities"), and

17   for individuals to seek and pursue the Relevant Opportunities.

18        3.       Facebook provides tools to businesses ("Businesses") to allow them to target

19   particular individuals and groups of individuals based on information about Facebook users that

20   Facebook collects, analyzes, and categorizes.  The tools that Facebook provides Businesses enable

21   and encourage discrimination by excluding African Americans, Latinos, and Asian Americans—but

22   not white Americans—from receiving advertisements for the Relevant Opportunities.

23        4.       By designing and providing those tools to Businesses, Facebook has engaged in a

24   pattern or practice of providing racially discriminatory marketing, recruitment, sourcing,

1  advertising, branding, information, and/or hiring services for and on behalf of employers, housing

2  providers, and creditors in violation of federal and state civil rights laws.

3          5.      In 1866, Congress enacted Sections 1981 and 1982 to ensure that all persons would

4  have an equal right to make and enforce contracts and purchase and sell real property.  42 U.S.C.

5  §§ 1981, 1982.

6          6.      In 1964, due to the intransigence of ongoing systemic discrimination caused by

7  individual bad actors and societal forces, Congress enacted Title VII of the Civil Rights Act to ban

8  employment discrimination based on race, national origin, and other protected classes, and in 1968

9  Congress enacted the Fair Housing Act as Title VIII of the Civil Rights Act to ban housing

10  discrimination based on race, national origin, and other protected classes.  Through these laws,

11  Congress mandated that employers and employment agencies cannot engage in discriminatory

12  marketing, hiring, or recruitment services and that employers, employment agencies, salespeople,

13  and corporations cannot publish discriminatory employment or housing advertisements.

14          7.      Likewise, in 1974, Congress enacted the Equal Credit Opportunity Act to ban

15  discrimination in credit transactions, and the federal government has interpreted ECOA to ban

16  discriminatory marketing services and the discriminatory publication of credit opportunities,

17  including advertising that would discourage a person from applying for credit.

18          8.      For decades, federal courts and enforcement agencies have understood that Title VII,

19  the FHA, and ECOA provide a cause of action against entities engaged in discriminatory

20  advertising, marketing, or recruitment, not only when the *content* of the relevant material expresses

21  bias for or against a particular group, but also when *certain people or communities* are targeted to

22  receive the relevant materials or are excluded from receiving the relevant materials, regardless of

23  the content of the materials.

24          9.      More generally, these federal civil rights laws, as well as Section 1981 and Section

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1982, ban discrimination in the process by which companies recruit, hire, source, and/or procure applicants for employment, housing, and credit opportunities.

10.     In 1959, the California Legislature enacted the Fair Employment and Housing Act, which has long barred discriminatory marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services in which companies seek applicants for economic opportunities.

11.     Before the development of the modern internet, if a Business wanted to recruit workers, sell or rent housing, or offer credit opportunities, the company would likely hire a marketing firm to determine the content of advertisements to send to prospective applicants; decide the audience to be targeted by the advertisements; identify which publications to place the advertisements; contact and negotiate with newspapers, magazines, television stations, and delivery people to place the advertisements; and pay for the advertisements.  The marketing firm could help the Business to determine how placing advertisements in different types of publications or media or delivering mail or flyers to the homes of residents in certain areas would reach a desired population of individuals, who would respond to the advertisements by applying for employment, housing, or credit opportunities.  In some cases, marketing firms would—in contravention of federal and state civil rights laws—offer tools for Businesses to target advertising to white Americans and/or exclude African Americans, Latinos, and Asian Americans, and marketing firms would execute such discriminatory targeting strategies on behalf of those Businesses.

12.     In the modern day, when Businesses want to recruit applicants for employment, housing, and credit opportunities, Facebook performs the necessary functions to create the advertisement; collect, develop and provide databases of information on Facebook users to Businesses so that such Businesses can discriminate between various populations in their recruitment, marketing and/or or advertising campaigns; develop the recruitment, marketing and/or advertising strategy to determine which people will and will not receive the advertisements; and

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1    deliver the advertisements to those people.

2          13.    Facebook in part or in whole creates, develops, collects, analyzes, categorizes,

3    channels, and delivers the marketing, recruitment, sourcing, advertising, branding, information,

4    and/or hiring services that employers, housing providers, and creditors use to identify, communicate

5    with, recruit, advertise for, seek, hire, and/or attract applicants for employment, housing, and credit

6    opportunities.  By creating, developing, channeling, collecting, analyzing, categorizing, and

7    executing these marketing, recruitment, sourcing, advertising, branding, information, and/or hiring

8    services, Facebook has violated the federal and state civil rights laws set forth herein by

9    encouraging, enabling, and performing discriminatory marketing, recruitment, sourcing,

10   advertising, branding, information, and/or hiring services for Businesses that seek applicants for

11   employment, housing, and credit opportunities.

12         14.    At the heart of Facebook's powerful marketing platform are tools for advertisers to

13   exclude or include Facebook users who will view an advertisement, and those tools facially

14   discriminate based on various protected classes, including race and national origin, or discriminate

15   based on other characteristics that have an unjustified adverse impact based on race or national

16   origin, including the zip code a person lives in or characteristics that are similar to a company's

17   existing customers.

18         15.    In short, Facebook is not a passive player in the commercial market in which

19   Businesses seek employment, housing and credit opportunities.  Instead, Facebook's platform and

20   tools are a central aspect of Businesses' ability to selectively market, recruit, source, advertise, and

21   brand employment, housing, and credit opportunities in a discriminatory manner.  While Facebook

22   believes that it is desirable to limit which Facebook users will see an advertisement based on the

23   race, national origin, and/or location of the Facebook user, federal and state law prohibit racial and

24   national origin discrimination in affording employment, housing, and credit opportunities.  Rather

than promoting nondiscrimination and integration—the twin aims of federal and state civil rights laws—discriminatory marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services perpetuate segregation, discrimination, and division in America.

16.     While it is well-settled that redlining (the exclusion of whole communities from economic opportunities, such as mortgage lending or housing purchases) constitutes unlawful discrimination, Facebook's discriminatory marketing platform enables employers, housing providers, and creditors to draw a red line around a predominantly African American, Latino, or Asian American community and exclude the residents in that community from receiving advertisements about employment, housing, and credit opportunities.

17.     Until Facebook ceases its discriminatory marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services, people of color who seek employment, housing, and credit opportunities will continue to be denied economic opportunities and all communities will be denied the benefits of living in a more equal, united, and integrated society.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiffs assert federal claims under Title VII, the FHA, ECOA, Section 1981, and Section 1982; under 28 U.S.C. § 1343(a)(4) as Plaintiffs seek to secure equitable and other relief under federal civil rights laws; under 42 U.S.C. § 3613(a)(1)(A) as Plaintiffs seek appropriate relief regarding a discriminatory housing practice under the Fair Housing Act; under 42 U.S.C. § 2000e-5(f)(3), as Plaintiffs seek relief under Title VII; and under 15 U.S.C. § 1691e(f), as Plaintiffs seek relief under ECOA.

19.     The Court has supplemental jurisdiction over Plaintiffs' state law claims under the California Fair Employment and Housing Act, the California Unfair Competition Law, and the Unruh Civil Rights Act ("Unruh Act"), pursuant to 28 U.S.C. § 1367(a), as Plaintiffs' FEHA, UCL,

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1    and Unruh Act claims are so related to their federal claims in this action such that they form part of

2    the same case or controversy.

3        20.    The Court also has subject matter jurisdiction over all of the claims in this action

4    pursuant to 28 U.S.C. § 1332(d)(2), as the matter in controversy exceeds the sum or value of $5

5    million, exclusive of interest and costs, and it is a class action in which members of the plaintiff

6    Class are citizens of different states than Facebook.

7        21.    This Court has personal jurisdiction over Facebook.  There is general jurisdiction

8    over Facebook, as Facebook's corporate headquarters are located in this District in Menlo Park,

9    California, Facebook conducts substantial business throughout this District and in the State of

10   California, and Facebook employs thousands of workers in the State.  Facebook has consented to

11   this Court asserting personal jurisdiction over Facebook, as Facebook's Statement of Rights and

12   Responsibilities requires its users to resolve any disputes in the Northern District of California or a

13   state court located in San Mateo County and requires its users to "submit to the personal jurisdiction

14   of such courts for the purpose of litigating all such claims."[1]

15       22.    Declaratory and injunctive relief is sought and authorized by 28 U.S.C. §§ 2201 and

16   2202.

17       23.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1), as the sole Defendant

18   resides in this District, and under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or

19   omissions giving rise to Plaintiffs' claims occurred in this District, where Facebook conducts its

20   marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services and

21   other activities.  Venue is also proper because Facebook's Statement of Rights and Responsibilities

22   requires its users to resolve any disputes in the Northern District of California or a state court

23   located in San Mateo County.  The same Statement of Rights and Responsibilities provides that

24

---

[1] *See* https://www.facebook.com/terms.php.

FIRST AMENDED COMPLAINT
                                                      Case No. 16-cv-06440-EJD

1   "The laws of the State of California will govern this Statement, as well as any claim that might arise

2   between you and us, without regard to conflict of law provisions."

3         24.    Pursuant to the Equal Employment Opportunity Commission's ("EOEC") work-

4   sharing agreement with the California Department of Fair Employment and Housing ("DFEH"), the

5   charges of discrimination of Manriquez and Onuoha are considered dually filed with the DFEH.  By

6   notice dated February 7, 2017, the DFEH dismissed Onuoha's cases and issued a Notice of Right to

7   Sue, and by notice dated February 7, 2017, the EEOC issued Notice of Right to Sue to Onuoha.

8   Attached hereto as Exhibit A is a true and correct copy of Onuoha's charge of discrimination,

9   DFEH right to sue letter, and EEOC right to sue letter.

10                                  **THE PARTIES**

11         25.    Plaintiff Suzanne-Juliette Mobley is an African-American resident of New Orleans,

12   Orleans, and lives in a predominantly African-American community.  More than 70 percent of the

13   residents of the zip code in which Mobley resides are African American.  Mobley is a Community

14   Engagement Manager, a mother, and a regular Facebook user.  Throughout the past year, Mobley

15   has sought and/or has been interested in obtaining housing, employment, and credit opportunities,

16   and in doing so has reviewed advertisements that various Businesses and Facebook selected for

17   Mobley to receive.

18         26.    Plaintiff Daniel Adrian Manriquez is a Latino resident of Phoenix, Arizona, and lives

19   in a predominantly Latino community.  More than 53 percent of the residents of the zip code in

20   which Manriquez resides are Latino and more than 13 percent are African American.  Manriquez is

21   a regular Facebook user.  Throughout the past year, Manriquez has sought and/or has been

22   interested in obtaining housing, employment, and credit opportunities, and in doing so has reviewed

23   advertisements that various Businesses and Facebook selected for Manriquez to receive.

24         27.    Plaintiff Victor Onuoha is an African American resident of Gretna, Louisiana, and

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

lives in a predominantly non-white community.  More than 38 percent of the residents of the zip

code in which Onuoha resides are African American and more than 15 percent are Latino.  Onuoha

is a regular Facebook user.  Throughout the past year, Onuoha has sought and/or has been interested

in obtaining housing, employment, and credit opportunities, and in doing so has reviewed

advertisements that various Businesses and Facebook selected for Onuoha to receive.

28.     Defendant Facebook, Inc. ("Facebook") is a publicly traded corporation,

headquartered at 1601 Willow Road, Menlo Park, California, 94025, incorporated under the laws of

the State of Delaware.  Facebook owns and operates an online social networking web site that

allows its billion-plus daily users to communicate with each other through the sharing of text,

photograph, and video.  Part of Facebook's web site is an Ad Platform that allows Businesses and

people to pay money to have Facebook provide marketing, recruitment, sourcing, advertising,

branding, information, and/or hiring services for such Businesses, including displaying

advertisements for employment, housing, and credit opportunities.  In 2015, Facebook earned 95

percent of its $17.93 billion in revenues from third parties who advertised on Facebook.

**FACTUAL ALLEGATIONS**

29.     According to Facebook's 2015 Annual Report, "Facebook is a mobile application

and website that enables people to connect, share, discover, and communicate with each other on

mobile devices and personal computers."  Facebook "had 1.04 billion daily active users (DAUs) on

average in December 2015."  *Id.*[2]  "There are a number of different ways to engage with people on

Facebook, the most important of which is News Feed which displays an algorithmically-ranked

series of stories and advertisements individualized for each person."  *Id.*

30.     According to Facebook's 2015 Annual Report, Facebook "generate[s] substantially

all of [its] revenue from selling advertising placements to marketers. [Its] ads let marketers reach

---

[2] *See* https://s21.q4cdn.com/399680738/files/doc_financials/annual_reports/2015-Annual-Report.pdf (Facebook, Inc. Annual Report for the Fiscal Year Ended December 31, 2015).

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

people based on a variety of factors including age, gender, location, interests, and behaviors. Marketers purchase ads that can appear in multiple places including on Facebook, Instagram, and third-party applications and websites."

31.     In advertising its marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services to Businesses, including employers, housing providers, and creditors, Facebook emphasizes how its services can be used to identify or target people who fall into various demographics groups:[3]

## Your people are here

Over a billion people use Facebook, Instagram and Audience Network every day. With our powerful audience selection tools, you can target the people who are right for your business. Using what you know about your customers—like demographics, interests and behaviors—you can connect with people similar to them. There are three options for choosing your audience on Facebook:







| Core Audiences | Custom Audiences | Lookalike Audiences |
|---|---|---|
| Select your audience manually based on characteristics, like age and location. | Upload your contact list to connect with your customers on Facebook. | Use your customer information to find people similar to them on Facebook. |

32.     In describing "How to target Facebook Ads" in order to "[r]efine your advertising to reach the people who matter most to your business," Facebook states that the advertiser should "[c]hoose the right audience" to "target specific groups[.]"  It encourages advertisers to use "[l]ocation targeting" that "allows you to reach customers in key locations by country, state/province, city and zip code" based on Facebook users' "stated location on their Timeline" and

---

[3] *See* https://www.facebook.com/business/products/ads/ad-targeting (in the "facebook business" section: "Choose your audience: Connect with the people who will love your business.").

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1    "their IP (Internet Protocol) address."  In addition, Facebook encourages advertisers to "refine your

2    ad's target audience based on content people have shared about themselves in their Facebook

3    profiles, such as age, gender, relationship status, education and type of work they do."[4]

4           33.    In describing how its "detailed targeting" function works—the primary Core

5    Audience function for manually targeting particular groups of people—Facebook gives advertisers

6    step-by-step instructions on how to click on the various drop-down menus to "include" certain types

7    of people and "exclude" other types of people.  The categories that can be used to exclude or

8    include Facebook users in the final audience who will receive advertisements include

9    "Demographics," "Interests," and "Behaviors," and these categories have a number of sub-

10   categories that can be selected to target with precision which individuals will receive

11   advertisements.

12          34.    When Businesses use Facebook's suggested drop-down forms to select which

13   Facebook users will receive their advertisements, Facebook encourages those Businesses to "Show

14   your ads to the right people in the right places."  Facebook Ads Manager, Create an Ad.[5]  Similarly,

15   Facebook's web page that gives a description of how to target Facebook users through

16   advertisements states in its title "Easier, More Effective Ways to Reach the Right People on

17   Facebook."[6]  And a similar web page describes "Targeting tips to reach the right people," and

18   displays a picture of two women who appear to be white.[7]

19          35.    As Facebook recently explained in demonstrating how Businesses can use the

20

---

[4] *See* https://www.facebook.com/business/a/online-sales/ad-targeting-details/ (in the "facebook

21   business" section: "How to target Facebook Ads: Refine your advertising to reach the people who matter most to your business.")

22   [5] *See* https://www.facebook.com/business/help/132037906870538 (in the "facebook business" section, describing the "Facebook Ads Manager" and the "Create an Ad" application).

23   [6] *See* https://www.facebook.com/business/news/Core-Audiences (in the "facebook business" section: "Easier, More Effective Ways to Reach the Right People on Facebook").

24   [7] *See* https://www.facebook.com/business/a/facebook-ads-targeting-tips (in the "facebook business" section: "Targeting tips to reach the right people").

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1   Primary Core Audience function to manually target certain groups of Facebook users, by using its

2   numerous drop-down menus, an advertiser creates its "final audience."  As Facebook explained, the

3   final audience could meet the following criteria:

4       •    People in the United States
        •    Who are between the ages of 15-35
5       •    And are also men
        •    They must also use either an iPhone 6 OR an iPhone 6 Plus
6       •    They must also be interested in action games to be in my audience
        •    However, if they meet all of the above but have a 2G network connection, then
7            they'll be excluded from my audience.[8]

8          36.     While some of these characteristics that are "include[d]" or "exclude[d]" may seem

9   innocuous, numerous protected characteristics that involve or relate to race, national origin,

10  ethnicity, sex, national origin, religion, and age, can be used to select which Facebook users will

11  have the opportunity to view the advertisement and which Facebook users will not be afforded the

12  same opportunity.

13         37.     Through its "Demographics" category and "Ethnic Affinity" sub-category, Facebook

14  encourages, enables, and assists advertisers to include or exclude who will view the advertisements

15  based on the race or perceived race of the Facebook user.  The "Demographics-Ethnic Affinity"

16  choices are the following:

17      •    African American (US)
        •    Asian American (US)
18      •    Hispanic (US – All)
        •    Hispanic (US – Bilingual)
19      •    Hispanic (US – English dominant)
        •    Hispanic (US – Spanish Dominant)
20

21  Facebook Ads Manager, Create an Ad.[9]

22  ─────────────────────────────
[8] *See* Digital Marketer, Facebook Flex Targeting: Now You Can Have Your Cake AND-OR Eat It
23  Too (Nov. 13, 2015), http://www.digitalmarketer.com/facebook-flex-targeting/ (describing
    Facebook's demonstration of its targeting to identify a "final audience").
24  [9] *See* https://www.facebook.com/business/help/132037906870538 (in the "facebook business"
    section, describing the "Facebook Ads Manager" and the "Create an Ad" application).

FIRST AMENDED COMPLAINT
                                              Case No. 16-cv-06440-EJD

38.     Unlike the African American, Asian American, and Hispanic "Demographics" groups that can be used by Businesses to exclude Facebook users in these demographic groups from receiving Facebook advertisements, Facebook does not have a white "Demographics" group that can be used to similarly exclude white Facebook users or Facebook users who have an affinity for whites.

39.     Based on a user's online activity, Facebook automatically designates its users as having a particular racial or Demographics-Ethnic Identity, which, in turn, is used to exclude or include the person in marketing or recruiting from advertisers.

40.     Based on a user's online activity, Facebook automatically designates its users in a particular Expat subcategory/national origin, which, in turn, is used to exclude or include the person in marketing or recruiting from advertisers.

41.     In order to assist Businesses in identifying individuals who would may be seeking employment, housing, and credit opportunities, Facebook creates profiles of its users—based on their Internet activity—so that Facebook can assist advertisers who want to target their advertisements to Facebook users who may be interested in employment, housing, or credit opportunities.  For example, by selecting drop-down choices provided by Facebook (as well as categorizes that can be searched for in a search engine), Businesses can use Facebook's services to target their advertisements to individuals who fall into the following categories of people who have expressed an interest in or have liked Facebook pages related to housing, employment, or credit:

| **EMPLOYMENT** | **HOUSING** | **CREDIT** |
|---|---|---|
| Job | Housing | Credit cards |
| Job hunting | Affordable housing | Credit (finance) |
| Job fair | Apartment | Credit history |
| Finding a New Job | Multi-family residential | Line of credit |
| Looking for a New Job | Renting | Creditor |
| Employment | Rent-to-own | Car finance |
| Employment website | Likely to move | Title loan |

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

| **EMPLOYMENT** | **HOUSING** | **CREDIT** |
|---|---|---|
| Employment agency | New mover | Student loan |
| Employment contract | Mortgage loans | Student Loan Support |
| Turnover (employment) | Mortgage modification | Private student loan |
| Involuntary termination of employment | Second mortgage | Student loan default in U.S. |
| Dismissal (employment) | Flexible mortgage | Student Loans Company |
| Permanent employment | Subprime mortgage | Student debt |
| Application for Employment | Recent homebuyer | |
| Temporary Work | Recent mortgage borrower | |
| Jobless | | |
| Unemployed | | |
| Being unemployed | | |
| Unemployed Looking for work | | |
| Unemployment extension | | |

42.     In addition to encouraging, enabling, and assisting advertisers to exclude or include Facebook users from receiving advertisements based on their racial demographic backgrounds and their interests in employment, housing, and credit opportunities, Facebook encourages and assists Businesses in excluding and including individuals who live in particular locations, such as individuals who live in a specific zip code, as well as individuals who were "recently in this location" or were "traveling in this location."

43.     When an advertiser heeds Facebook's encouragement to exclude or include people who live in certain zip codes, Facebook's mapping tool draws a bright red line around the zip code that is being excluded (and whose residents will not receive the advertisement) and a blue line around the zip code that is being included (and whose residents will receive the advertisement). Thus, Businesses who are marketing to and recruiting applicants for employment, housing, and credit opportunities can literally redline an entire zip code or group of zip codes.

- 13 -

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

44.     By encouraging Businesses to exclude and include people who live in particular

locations, especially zip codes, and by giving them the tools and services to do so with precision,

Facebook encourages, enables and assists Businesses to place advertisements that often will

disproportionately reach people of a particular racial or ethnic background or national origin and

will not reach other people from different racial or ethnic backgrounds or national origin.

45.     As Facebook is aware, metropolitan areas throughout the United States are highly

segregated based on race, such that marketing to or recruiting applicants for employment, housing,

or credit opportunities based on the zip code in which the potential applicants reside can be

expected to exclude or include certain communities based on race or national origin, and has the

effect of excluding African American, Latino, and other non-white communities.

46.     Similar to Facebook's detailed targeting tool that excludes Facebook users based on

location, Facebook encourages Businesses to limit the geographic scope of their advertisements by

a mileage radius around a single location.  For example, by allowing advertisers to select a 1 mile

radius drop-down button, Facebook encourages, enables, and assists Businesses to send an

advertisement only to people within one mile in any direction of a particular place.  In highly

segregated areas, limiting the geographic scope of an advertisement to a one-mile radius will

disproportionately reach people of a particular racial or ethnic background or national origin and

will not reach other people from different racial or ethnic backgrounds or national origin.

47.     All of the information that Facebook provides to Businesses that enables those

Businesses to determine who will and who will not receive their advertisements is created or

developed in whole or in part by Facebook, including information on Facebook users'

Demographics, Ethnic Affinity, Interests, and Location.

48.     In addition to encouraging, enabling, and assisting advertisers to employ features

that expressly target individuals based on race, national origin, and their geographic location,

1    Facebook encourages, enables, and assists Businesses to target advertisements to only their existing

2    customers (*i.e.*, "Custom Audiences") and to target advertisements to individuals who are similar to

3    their existing customers (*i.e.*, "Lookalike Audiences").  As Facebook explains, "A Lookalike

4    Audience is a way to reach new people who are likely to be interested in your business because

5    they're similar to people who already are."[10]  Facebook uses "traits" such as "location, age, gender

6    and interests" to determine which Facebook users are similar to an advertiser's existing

7    customers.[11]  Facebook, not the advertiser, determines which customers are similar and will, thus,

8    be targeted to receive an advertisement in a Lookalike Audience.  After the advertiser uploads its

9    list of existing customers, Facebook will "hash [its] data, upload it and create [the] audience[.]"[12]

10           49.     In describing "Targeting tips to reach the right people," Facebook states that it

11   "recommend[s] creating your ads through Ads Manager, using the Facebook pixel, and *maintaining*

12   *a list of your current customers to set yourself up for ads targeting success*."  To do this effectively,

13   Facebook recommends that the Business (1) "Understand your target audience," especially "Who

14   they are based on demographics," (2) "Be specific about who you want to reach," because "[w]hen

15   you narrow your targeting you can focus on reaching the people *who matter most* to your business,"

16   including by targeting Custom Audiences, and (3) "Reach interested and engaged audiences," by

17   "find[ing] more people on Facebook who share traits – like location, age, gender, and interests –

18   with your customers[.]"[13]

19           50.     On Facebook's web site, Facebook describes for users "How does Facebook decide

20   which ads to show me," and states that "[t]o decide which ads to show you, we use . . . information

21   [10] *See* https://www.facebook.com/business/help/164749007013531 (in the "facebook business" section: "Introduction to Lookalike Audiences").

22   [11] *See* https://www.facebook.com/business/a/facebook-ads-targeting-tips (in the "facebook business" section: "Targeting tips to reach the right people").

23   [12] *See* https://www.facebook.com/business/help/170456843145568 (in the "facebook business" section: "How do I create a Custom Audience from my customer file?").

24   [13] *See* https://www.facebook.com/business/a/facebook-ads-targeting-tips (in the "facebook business" section: "Targeting tips to reach the right people").

FIRST AMENDED COMPLAINT
                                         Case No. 16-cv-06440-EJD

about you from your Facebook account (ex: your age, your gender, your location, the devices you use to access Facebook)."[14]

51.     When Facebook places an advertisement on a customer's personal Facebook page, Facebook gives the customer an opportunity to see why the customer has been selected to see that particular advertisement.  Under the so-called "Why am I seeing this" function, Facebook tells customers, for example, that they are seeing the advertisement because the Business wants to reach people who may be similar to their customers, people who are part of an audience called Ethnic affinity-African American (US), or people who are in specific location or area.

52.     As the Washington Post recently explained: "When combined with the information you've already given Facebook, through your profile and your clicks, you end up with what is arguably the most complete consumer profile on earth: a snapshot not only of your Facebook activity, but your behaviors elsewhere in the online (and offline!) worlds."  Those data points include: "Location," "Age," "Gender," "Language," "Education level," "Ethnic affinity," "Income and net worth," "Home ownership and type," "users who have new jobs," "Employer," "Industry," and "Job title."[15]

53.     Facebook has emerged as one of the largest venues for employers, housing providers, and credit providers to seek applicants for employment, housing, and credit opportunities.  For example, most individuals who seek employment opportunities use Facebook to look for work, the vast majority of job seekers have Facebook profiles, and large numbers of employers, housing providers, and credit providers use Facebook to recruit, hire, market, advertise, and brand themselves to individuals who are seeking employment, housing, and credit

---

[14] *See* https://www.facebook.com/help/562973647153813?helpref=related (in the Facebook "help center" section: "How does Facebook decide which ads to show me and how can I control the ads I see?").

[15] Caitlin Dewey, *98 personal data points that Facebook uses to target ads to you*, Wash. Post (Aug. 19, 2016), https://www.washingtonpost.com/news/the-intersect/wp/2016/08/19/98-personal-data-points-that-facebook-uses-to-target-ads-to-you/?utm_term=.e8c925794fe0.

FIRST AMENDED COMPLAINT
                                                   Case No. 16-cv-06440-EJD

1    opportunities.  For example, a 2015 survey reported that 92 percent of employment recruiters user

2    social media to recruit applicants for employment.[16]  In addition, a 2016 study by the Society for

3    Human Resource Management found that 66 percent of employers who recruit via social media

4    employ Facebook to recruit applicants for employment.[17]  Notably, the ability to recruit passive job

5    candidates is the top reason that employers use social media to recruit applicants for employment.

6    And some employers even use social media as their primary source of recruiting.[18]

7            54.    Employers, housing providers, and credit providers not only sponsor advertisements

8    on Facebook users' news feeds to seek applicants for specific employment, housing, or credit

9    opportunities, but they also use Facebook as a main source of showcasing their brands to potential

10    applicants.[19]  Enhancing a company's brand increases the likelihood that a person will apply for

11    employment, housing, or credit opportunities with that company in the future.

12            55.    Upon information and belief, Facebook has engaged in a pattern or practice of

13    providing marketing, recruitment, sourcing, advertising, branding, information, and/or hiring

14    services for and on behalf of Businesses that seek applicants for employment, housing, and credit

15    opportunities via Facebook and that use Facebook's targeting tools to exclude which Facebook

16    customers will receive such marketing, recruitment, sourcing, advertising, branding, information,

17    and/or hiring advertisements for employment, housing, and credit opportunities based expressly on

18    race or national origin of the Facebook user and based on facially neutral characteristics of the

19    Facebook user that have a disparate impact on African American, Latino, Asian American and other

20

21    [16] AdWeek, Survey: 92% of Recruiters Use Social Media to Find High-Quality Candidates (Sept.
      22, 2015), http://www.adweek.com/socialtimes/survey-96-of-recruiters-use-social-media-to-find-
      high-quality-candidates/627040.

22    [17] SHRM Survey Findings: Using Social Media for Talent Acquisition—Recruitment and
      Screening (Jan. 7, 2016), at 9, https://www.shrm.org/hr-today/trends-and-forecasting/research-and-

23    surveys/Documents/SHRM-Social-Media-Recruiting-Screening-2015.pdf.
      [18] *Id.* at 7, 11.

24    [19] *See, e.g.*, Link Humans, How Social Media is Used for Recruiting in 2013 (Study),
      http://linkhumans.com/blog/social-recruiting-2013.

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1  non-white persons, including the location of the Facebook user and the user's similarity to the

2  company's existing customers ("pattern or practice").

3       56.    Upon information and belief, Facebook's pattern or practice facially discriminates

4  against African Americans, Latinos, Asian Americans, and other non-white Facebook users whom

5  Facebook has identified as African Americans, Latinos, or Asian Americans, or having an affinity

6  for or an association with such groups, and its pattern or practice has as an unjustified disparate

7  impact on African Americans, Latinos, Asian Americans, and other non-white individuals.

8       57.    Upon information and belief, by providing marketing, recruitment, sourcing,

9  advertising, branding, information, and/or hiring services for and on behalf of Businesses that seek

10  applicants for employment, housing, and credit opportunities via Facebook based on a racial or

11  ethnic group that Facebook knows or believes the user has an affinity for, an association with, is a

12  member of, or otherwise likes, Facebook is engaging in disparate treatment, race- or national

13  origin-based stereotyping, and/or associational discrimination based on race or national origin, and

14  Facebook is engaging in practices that have an unjustified disparate impact on African American,

15  Latinos, Asian American, and other non-white individuals.

16       58.    Upon information and belief, for a substantial period of time Plaintiffs and members

17  of the proposed Class have not received (or have not regularly received) Facebook advertisements

18  for employment, housing and/or credit opportunities from Facebook and Businesses that use

19  Facebook's marketing, recruitment, sourcing, advertising, branding, information, and/or hiring to

20  seek applicants for such employment, housing and/or credit opportunities, including advertisements

21  that were provided to similarly situated white individuals and/or individuals who lived or were

22  present in predominantly white zip codes.  As a result, Plaintiffs and members of the proposed

23  Class have been denied employment, housing, and credit opportunities by Facebook and such

24  Businesses.

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

## CLASS ACTION ALLEGATIONS

59.     **Class definition.**  Plaintiffs Mobley, Manriquez, and Onuoha bring each claim set forth herein pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) and (b)(3), on behalf of the following persons:

> All African American, Latino, and Asian American Facebook users located within the United States who were interested in receiving or pursuing employment, housing, and credit opportunities, and due to Facebook's marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services that facially discriminate based on race or national origin or have a disparate impact based on race or national origin, were excluded from receiving marketing, recruitment, sourcing, advertising, branding, information, and/or hiring advertisements for housing, employment, or credit opportunities at any time from the earliest date actionable under the limitations period applicable to the given claim, until the date of judgment in this action.

The limitations period for each claim is set forth below, within the allegations for each claim.

60.     Not included in the Class are the following individuals and/or entities: Facebook's officers and directors and all judges assigned to hear any aspect of this litigation, as well as their staffs and immediate family members.

61.     **Numerosity.**  The class is so numerous that joinder of all members is impracticable. The exact size of the class is not known.  Upon information and belief, the class consists of millions of Facebook users, and those users are geographically dispersed throughout the United States.

62.     According to Facebook, there are nearly 26 million Facebook users whom Facebook identifies as "African American (US)" or having an affinity as African American; more than 8 million Facebook users whom Facebook identifies as "Asian American (US)" or having an affinity as Asian American; more than 32 million Facebook users whom Facebook identifies as "Hispanic (US – All)" or having an affinity as Hispanic.

63.     **Commonality.**  There are numerous questions of law or fact that are common to the class members.  Upon information and belief, the class members were subjected to and injured by Facebook's same pattern, practice, or policy of providing marketing, recruitment, sourcing,

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1   advertising, branding, information, and/or hiring services for and on behalf of Businesses that seek

2   applicants for employment, housing, and credit opportunities via Facebook and that employ

3   Facebook's targeting tools to exclude which Facebook customers will receive such marketing,

4   recruitment, sourcing, advertising, branding, information, and/or hiring advertisements for

5   employment, housing, and credit opportunities based expressly on race or national origin of the

6   Facebook user or based on facially neutral characteristics of the Facebook user that have a disparate

7   impact on African American, Latino, Asian American, and other non-white persons, including the

8   location of the Facebook user and the user's similarity to the company's existing customers.  The

9   questions of law or fact that are common to the class members include:

10       (a)   Did Facebook on a nationwide basis provide marketing, recruitment, sourcing,

11           advertising, branding, information, and/or hiring services to employers, housing

12           providers, and credit providers that limit which Facebook users will receive

13           advertisements based on their race, national origin, or location.

14       (b)   Did Plaintiffs and other members or the proposed Class receive fewer Facebook

15           advertisements for employment, housing, and/or credit opportunities because of their

16           race or national origin, perceived race or national origin, or location.

17       (c)   Whether Facebook's pattern or practice constitutes unlawful disparate treatment

18           against African Americans, Latinos, Asian Americans, and other non-white

19           individuals in the marketing or recruitment of applicants for employment, housing,

20           and credit opportunities in violation of Title VII, the Fair Housing Act, the Equal

21           Credit Opportunity Act, Section 1981, Section 1982, the California Fair

22           Employment and Housing Act, and the California Unruh Civil Rights Act.

23       (d)   Whether Facebook's pattern or practice constitutes publishing a notice or

24           advertisement relating to employment, housing, or credit that indicates a preference

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1    or discrimination based on race or national origin in violation of Title VII, the Fair

2    Housing Act, the Equal Credit Opportunity Act, and the California Fair Employment

3    and Housing Act.

4    (e)    Whether Facebook's pattern or practice constitutes unlawful disparate impact

5    discrimination against African Americans, Latinos, Asian Americans, and other non-

6    white individuals in the marketing or recruitment of applicants for employment,

7    housing, and credit opportunities in violation of Title VII, the Fair Housing Act, the

8    Equal Credit Opportunity Act, Section 1982, and the California Fair Employment

9    and Housing Act.

10    (f)    The types of injunctive and/or declaratory relief that should be ordered with respect

11    to Facebook's past and ongoing pattern or practice.

12    (g)    The types and amounts of damages that should be awarded to Plaintiffs and the

13    members of the Proposed Class.

14    64.    **Typicality.**  The claims of the Named Plaintiffs are typical of the claims of the

15    Plaintiff class they seek to represent.  The claims of the Named Plaintiffs arise from the same

16    pattern or practice and rely upon the same legal theories that the challenged pattern or practice

17    violates a variety of federal and state civil rights statutes.

18    65.    **Adequacy.**  The Named Plaintiffs will adequately represent the members of the

19    Class, do not have any conflicts with the other class members, and are represented by experienced

20    counsel who have substantial experience in employment discrimination, fair housing, and credit

21    discrimination class action litigation and who will vigorously prosecute the action on behalf of the

22    class.

23    66.    **Predominance.**  The questions of law and fact common to the members of the class

24    predominate over questions affecting individual class members, and a class action is superior to

- 21 -

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1    other available methods for the fair and efficient resolution of this controversy.

2        67.   **Superiority.**  By resolving the common issues described above in a single class

3    proceeding, each member of the proposed class will receive a determination of whether Facebook

4    engaged in a pattern, practice, or policy of providing marketing, recruitment, sourcing, advertising,

5    branding, information, and/or hiring services for and on behalf of Businesses that seek applicants

6    for employment, housing, and credit opportunities via Facebook and that employ Facebook's

7    targeting tools to exclude which Facebook customers will receive such marketing, recruitment,

8    sourcing, advertising, branding, information, and/or hiring advertisements for employment,

9    housing, and credit opportunities based expressly on race or national origin of the Facebook user

10   and based on facially neutral characteristics of the Facebook user that have a disparate impact on

11   African American, Latino, Asian American, and other non-white persons, including the location of

12   the Facebook user and the user's similarity to the company's existing customers, and whether that

13   pattern, practice, or policy violated federal and/or state law.  Members of the class do not have a

14   significant interest in individually controlling the prosecution of separate actions.  Other than this

15   action, no litigation concerning Facebook's pattern or practice has been commenced by any

16   member of the class.

17       68.   **Manageability.**  Concentration of the litigation in this forum is desirable, as this

18   action challenges a company-wide practice, it will benefit the class members to have all of the class

19   members' claims adjudicated in a single proceeding, and Facebook's Statement of Rights and

20   Responsibilities requires all Facebook users to file suit in this District.  This class action can be

21   managed without undue difficulty.

22

23

24

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**COUNTS**

**FIRST COUNT:**
**Cal. Bus. & Prof. Code §17200, et seq.**
**(Unfair Competition Violation of California's Unfair Competition Law)**

69.     Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

70.     Unfair practices prohibited by the UCL include "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

71.     Facebook committed unlawful and unfair business practices, including but not limited to discriminating against Plaintiffs and Class Members because of their race or national origin in violation of the FEHA's employment discrimination and housing accommodations provisions.  Accordingly, Plaintiffs and Class Members have suffered injury in fact.

72.     Facebook's conduct alleged herein occurred during the four years preceding the filing of this complaint.

73.     Facebook unfairly obtained profits as a direct and proximate result of its unlawful conduct alleged herein.  Plaintiffs and Class Members are therefore entitled to disgorgement by Facebook of those profits.

74.     Facebook committed the unlawful actions herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs and Class Members, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiffs and Class Members.  Plaintiffs and Class Members are therefore entitled to recover punitive damages from Defendants in an amount according to proof.

75.     Plaintiffs and Class Members are entitled to declaratory relief declaring that Facebook's pattern or practice of providing marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses that seek applicants for

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

employment and housing opportunities via Facebook and that employ Facebook's targeting tools to exclude which Facebook customers will receive such marketing, recruitment, sourcing, advertising, branding, information, and/or hiring advertisements for employment and housing opportunities based expressly on the race or national origin (or perceived race or national origin) of the Facebook user and based on facially neutral characteristics of the Facebook user that have a disparate impact on African Americans, Latinos, Asian Americans, and other non-white individuals, including the location of the Facebook user (as specific as the person's zip code) and the user's similarity to the company's existing customers is unlawful and appropriate injunctive relief.

76.     The limitations period for Plaintiffs' California UCL claims is four years.  Cal. Bus. & Prof. Code § 17208.

**SECOND COUNT:**
**Cal. Civil Code § 51(b)**
**California Unruh Civil Rights Act**
**(Employment, Housing and Credit Discrimination; Intentional Discrimination)**

77.     Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

78.     The California Unruh Civil Rights Act provides in part: "All persons within the jurisdiction of this state are free and equal, and no matter what their . . . race . . .[]or national origin . . . are entitled to the full and equal . . . advantages, . . . , privileges, or services in all business establishments of every kind whatsoever."  Cal. Civil Code § 51(b).

79.     Upon information and belief, by engaging in a pattern or practice of providing marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses that seek applicants for employment, housing, and credit opportunities via Facebook and that employ Facebook's targeting tools to exclude which Facebook customers will receive such marketing, recruitment, sourcing, advertising, branding, information, and/or hiring advertisements for employment, housing, and credit opportunities based expressly on race or

national origin of the Facebook user, Facebook has intentionally discriminated against African

Americans, Latinos, Asian Americans, and other non-white individuals based on race or national

origin in violation the Unruh Civil Rights Act's prohibition against discrimination based on race or

national origin in the advantages, privileges, or services of all business establishments.

80.     Furthermore, Facebook's pattern or practice of providing marketing, recruitment,

sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses

that market and recruit applicants for employment, housing, and credit opportunities via Facebook

and that use Facebook's targeting tools to exclude which Facebook customers based on a racial or

ethnic group that Facebook knows or believes the user has an affinity for, is a member of, or

otherwise likes constitutes disparate treatment, race- or national origin-based stereotyping, and

associational discrimination based on race or national origin, in violation of the Unruh Civil Rights

Act.

81.     Upon information and belief, due to Facebook's pattern or practice Plaintiffs and

members of the putative class have been denied the opportunity to receive the same advantages,

privileges, and services related to employment, housing, and credit opportunities that Facebook

provided to similarly situated white potential applicants for such opportunities, and accordingly

suffered economic and non-economic harm.

82.     The limitations period for Plaintiffs' California Unruh Civil Rights Act claims is

three years.

### THIRD COUNT:
#### Gov. Code § 12940(d), (k), & (i), and §12955(a), (c), (k), (g), (j)
#### Cal. Fair Employment and Housing Act
#### (Employment and Housing Discrimination)

**A.     FEHA Liability for an Employment Agency or for Aiding and Abetting Employers**

83.     Plaintiffs repeat and incorporate the allegations contained in the foregoing

1    paragraphs as if fully set forth herein.

2        84.    Upon information and belief, by engaging in a pattern or practice of providing

3    marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

4    on behalf of Businesses that seek applicants for employment, housing, and credit opportunities via

5    Facebook and that employ Facebook's targeting tools to exclude which Facebook customers will

6    receive such marketing, recruitment, sourcing, advertising, branding, information, and/or hiring

7    advertisements for employment, housing, and credit opportunities based expressly on the race or

8    national origin (or perceived race or national origin) of the Facebook user and based on facially

9    neutral characteristics of the Facebook user that have a disparate impact on African Americans,

10   Latinos, Asian Americans, and other non-white individuals, including the location of the Facebook

11   user (as specific as the person's zip code) and the user's similarity to the company's existing

12   customers, Facebook, an employment agency and a person who has aided and abetted employers,

13   has violated the California FEHA, Gov. Code §12940(d), (k), & (i), and §12955(a), (c), (k), (g), (j).

14       85.    The California FEHA provides that "It is an unlawful employment practice . . . For

15   an employer [or] employment agency . . . to fail to take all reasonable steps necessary to prevent

16   discrimination and harassment from occurring."  Gov. Code § 12940(k).

17       86.    Facebook is an "employment agency" under FEHA, as Facebook is "any person

18   [who] undertak[es] for compensation to procure employees or opportunities to work," Gov. Code

19   § 12926(e), and "'person' includes one or more . . . corporations."  Gov. Code § 12925(d). Upon

20   information and belief, Facebook regularly receives compensation from employers to place

21   advertisements for employers—and provide related marketing, recruitment, sourcing, advertising,

22   branding, information, and/or hiring services to and on behalf of employers—in order to recruit

23   applicants for employment and encourage them to apply for employment with such employers.

24       87.    Upon information and belief, by engaging in a pattern or practice of providing

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses that seek applicants for employment via Facebook and that use Facebook's targeting tools to exclude which Facebook customers will receive such marketing, recruitment, sourcing, advertising, branding, information, and/or hiring advertisements for employment based expressly on the race or national origin (or perceived race or national origin) of the Facebook user and based on facially neutral characteristics of the Facebook user that have a disparate impact on African Americans, Latinos, Asian Americans, and other non-white individuals, including the location of the Facebook user (as specific as the person's zip code) and the user's similarity to the company's existing customers, Facebook, an employment agency, has failed to take all reasonable steps necessary to prevent discrimination against Plaintiffs.

88.     Upon information and belief, Plaintiffs were subjected to discrimination, including the receipt of discriminatory publications from and the denial of employment opportunities by employers, due to Facebook's pattern or practice; Facebook failed to take all reasonable steps to prevent discrimination by affirmatively providing employers with marketing and recruitment services that exclude applicants based on race or national origin or perceived race or national origin, or based on facially neutral characteristics that have a disparate impact on African Americans, Latinos, Asian Americans, and other non-white individuals; and Facebook's failure to take such reasonable steps caused Plaintiffs to suffer injury, as Plaintiffs were denied employment opportunities that were extended to similarly situated white persons.

89.     Upon information and belief, due to Facebook's pattern or practice Plaintiffs and members of the putative class have been denied the opportunity to receive and respond to employment advertisements that Facebook provided to similarly situated white potential applicants, and accordingly suffered economic and non-economic harm.

90.     The FEHA provides that "It is an unlawful employment practice . . . [f]or any

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1   employer or employment agency to print or circulate or cause to be printed or circulated any

2   publication . . . that expresses, directly or indirectly, any limitation, specification, or discrimination

3   as to race [or] national origin . . . or any intent to make any such limitation, specification, or

4   discrimination," Gov. Code § 12940(d), and that "race" or "national origin" "includes a perception

5   that the person has any of those characteristics or that the person is associated with a person who

6   has, or is perceived to have, any of those characteristics."  Gov. Code § 12926(o).

7       91.    Upon information and belief, by engaging in a pattern or practice of providing

8   marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

9   on behalf of Businesses that seek applicants for employment via Facebook and that use Facebook's

10  targeting tools to exclude which Facebook customers will receive such marketing, recruitment,

11  sourcing, advertising, branding, information, and/or hiring advertisements for employment based

12  expressly on the race or national origin (or perceived race or national origin) of the Facebook user

13  and based on facially neutral characteristics of the Facebook user that have a disparate impact on

14  African Americans, Latinos, Asian Americans, and other non-white individuals, including the

15  location of the Facebook user (as specific as the person's zip code) and the user's similarity to the

16  company's existing customers, Facebook, an employment agency, has printed or published or

17  caused to be published any publication that expresses directly or indirectly a limitation,

18  specification, or discrimination as to race or national origin, or to intend to make such a limitation,

19  specification, or discrimination, and has thereby harmed African American, Latino, Asian American

20  and other non-white individuals who are denied employment opportunities. Gov. Code § 12940(d).

21      92.    Furthermore, Facebook's pattern or practice of providing marketing, recruitment,

22  sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses

23  that seek applicants for employment via Facebook and that use Facebook's targeting tools to

24  exclude which Facebook customers based on a racial or ethnic group that Facebook knows or

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1   believes the user has an affinity for, is a member of, or otherwise likes constitutes disparate

2   treatment, race- or national origin-based stereotyping, and associational discrimination based on

3   race or national origin, and unlawful disparate impact discrimination against African American,

4   Latino, Asian American and other non-white individuals in violation of Gov. Code § 12940(d).

5        93.     Upon information and belief, due to Facebook's pattern or practice Plaintiffs and

6   members of the putative class have been denied the opportunity to receive and respond to

7   employment advertisements that Facebook provided to similarly situated white potential applicants,

8   and accordingly suffered economic and non-economic harm.

9        94.     The California FEHA provides that "It is an unlawful employment practice . . . [f]or

10  any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this

11  part, or to attempt to do so."  Gov. Code § 12940(i).

12       95.     Upon information and belief, by engaging in a pattern or practice of providing

13  marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

14  on behalf of employers that seek applicants for employment via Facebook and that use Facebook's

15  targeting tools to exclude which Facebook customers will receive such marketing, recruitment,

16  sourcing, advertising, branding, information, and/or hiring advertisements for employment based

17  expressly on the race or national origin (or perceived race or national origin) of the Facebook user

18  and based on facially neutral characteristics of the Facebook user that have a disparate impact on

19  African Americans, Latinos, Asian Americans, and other non-white individuals, including the

20  location of the Facebook user (as specific as the person's zip code) and the user's similarity to the

21  company's existing customers, Facebook, a "person," has aided, abetted, incited, compelled, and/or

22  coerced employers into engaging in acts that are forbidden by Cal. Gov. Code §§ 12940(a), (d), and

23  (k).

24       96.     Upon information and belief, by engaging in the same pattern or practice, Facebook

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1  substantially assisted, solicited, encouraged, and/or coerced employers to engage in discriminatory

2  recruiting and hiring that violates Gov. Code § 12940(a)'s prohibition on employers "because of

3  race [or] national origin" "refus[ing] to hire or employ the person," Gov. Code § 12940(a);

4  Facebook knew that such employers were violating their duties under § 12940(a) to recruit and hire

5  in a non-discriminatory manner; and, as described above, Facebook's own conduct violated the

6  FEHA with respect to potential applicants for employment.

7          97.     Upon information and belief, by engaging in the same pattern or practice, Facebook

8  substantially assisted, solicited, encouraged, and/or coerced employers to engage in discriminatory

9  advertising in which the employers "print[ed] or circulate[d] or cause[d] to be printed or circulated

10  any publication, . . . that expresses, directly or indirectly, any limitation, specification, or

11  discrimination as to race [or] national origin . . . or any intent to make any such limitation,

12  specification, or discrimination," in violation of  Cal. Gov. Code § 12940(d); Facebook knew that

13  such employers were violating their duties under § 12940(d) to print, circulate, and cause to print or

14  circulate publications that are not discriminatory; and, as described above, Facebook's own conduct

15  violated the FEHA with respect to potential applicants for employment.

16          98.     Upon information and belief, by engaging in the same pattern or practice, Facebook

17  substantially assisted, solicited, encouraged, and/or coerced employers to "fail to take all reasonable

18  steps necessary to prevent discrimination [] from occurring," in violation of Cal. Gov. Code

19  § 12940(k); Facebook knew that such employers were violating their duties under § 12940(k) to not

20  take all reasonable steps to prevent discrimination from occurring; and, as described above,

21  Facebook's own conduct violated the FEHA with respect to potential applicants for employment.

22          99.     Upon information and belief, due to Facebook's aiding and abetting employers in

23  violating Gov. Code §§ 12940(a), (d) and (k), Plaintiffs and members of the putative class have

24  been denied the opportunity to receive and respond to employment advertisements that Facebook

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1   provided to similarly situated white potential applicants, and accordingly suffered economic and

2   non-economic harm.

3       **B.      Liability for Violations of FEHA's Housing Provisions**

4       100.    Under the California FEHA, "It shall be unlawful . . . For the owner of any housing

5   accommodation to discriminate against or harass any person because of the race [or] national origin

6   . . . of that person."  Gov. Code § 12955(a).  Under the FEHA's housing accommodations

7   provisions, "'discrimination' includes refusal to sell, rent, or lease housing accommodations;

8   includes refusal to negotiate for the sale, rental, or lease of housing accommodations; includes

9   representation that a housing accommodation is not available for inspection, sale, or rental when

10  that housing accommodation is in fact so available; includes any other denial or withholding of

11  housing accommodations; . . . includes the provision of segregated or separated housing

12  accommodations[.]"  Gov. Code § 12927(c)(1).  The term "'Owner' includes the agent, broker, or

13  salesperson of the housing accommodations.  Gov. Code. § 12927(d).

14      101.    The FEHA also makes it unlawful "To otherwise make unavailable or deny a

15  dwelling based on discrimination because of race [or] national origin[.]"  Gov. Code § 12955(k).

16      102.    Upon information and belief, by engaging in a pattern or practice of providing

17  marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

18  on behalf of Businesses that market and recruit applicants for housing accommodations via

19  Facebook and that use Facebook's targeting tools to exclude which Facebook customers will

20  receive such marketing, recruitment, sourcing, advertising, branding, information, and/or hiring

21  advertisements for housing accommodations based expressly on the race or national origin (or

22  perceived race or national origin) of the Facebook user and based on facially neutral characteristics

23  of the Facebook user that have a disparate impact on African Americans, Latinos, Asian Americans,

24  and other non-white individuals, including the location of the Facebook user (as specific as the

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

person's zip code) and the user's similarity to the Businesses' existing customers, Facebook, an agent or salesperson of housing accommodations, has refused to sell, rent, or lease housing accommodations, has represented that housing accommodations are not available for inspection, sale or rental when they are, in fact, so available, has otherwise denied or withheld housing accommodations, and has provided segregated or housing accommodations in violation of § 12927(c)(1), and has otherwise made unavailable or denied a dwelling because of race or national origin in violation of § 12955(k).

103.    Upon information and belief, due to Facebook's pattern or practice Plaintiffs and members of the putative class have been denied the opportunity to receive and respond to housing accommodations advertisements that Facebook provided to similarly situated white potential applicants, and accordingly suffered economic and non-economic harm.

104.    Under the California FEHA, "It shall be unlawful . . . For any person or other organization or entity whose business involves real estate-related transactions to discriminate against any person in making available a transaction, or in the terms and conditions of a transaction, because of race [or] national origin[.]"  Gov. Code § 12955(i).

105.    Facebook is a person "whose business involves real estate-related transactions," Gov. Code § 12955(i), as Facebook is routinely involved in marketing or advertising loans for "purchasing, constructing, improving, repairing, or maintaining" dwellings and/or marketing or advertising real estate property.  Gov. Code § 12927(h)(1).

106.    Upon information and belief, by engaging  in a pattern or practice of providing marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses that seek applicants for housing loans via Facebook and that employ Facebook's targeting tools to exclude which Facebook customers will receive such marketing, recruitment, sourcing, advertising, branding, information, and/or hiring advertisements for housing

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1  loans based expressly on race or national origin (or perceived race or national origin) of the

2  Facebook user, Facebook has intentionally discriminated against African Americans, Latinos, Asian

3  Americans, and other non-white individuals in violation of Gov. Code § 12955(i), by

4  "discriminat[ing] against any person in making available a [real estate-related] transaction[.]" Gov.

5  Code § 12955(i).

6         107.    Upon information and belief, by engaging in a pattern or practice of providing

7  marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

8  on behalf of Businesses that seek applicants for housing loans via Facebook and that use

9  Facebook's targeting tools to exclude which Facebook customers will receive such marketing,

10  recruitment, sourcing, advertising, branding, information, and/or hiring advertisements for housing

11  loans based on facially neutral characteristics of the Facebook user that have a disparate impact on

12  African Americans, Latinos, Asian Americans, and other non-white individuals, including the

13  location of the Facebook user (as specific as the person's zip code) and the user's similarity to the

14  company's existing customers, Facebook, has engaged in disparate impact discrimination in

15  violation of Gov. Code § 12955(i), by "discriminat[ing] against any person in making available a

16  [real estate-related] transaction[.]"  Gov. Code § 12955(i).

17         108.    Upon information and belief, Facebook could have adopted a less discriminatory

18  alternative practice to target potential applicants for housing loans, such as limiting any geographic

19  targeting to the relevant housing market and/or prohibiting the providers of housing loans from

20  targeting their advertisements to specific zip codes.

21         109.    Furthermore, Facebook's pattern or practice of providing marketing, recruitment,

22  sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses

23  that seek applicants for housing loans via Facebook and that use Facebook's targeting tools to

24  exclude which Facebook customers based on a racial or ethnic group that Facebook knows or

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

believes the user has an affinity for, is a member of, or otherwise likes constitutes disparate

treatment, race- or national origin-based stereotyping, and associational discrimination based on

race or national origin, and unlawful disparate impact discrimination against African American,

Latino, Asian American and other non-white individuals in violation of Gov. Code § 12955(i).

110.    Upon information and belief, due to Facebook's pattern or practice Plaintiffs and

members of the putative class have been denied the opportunity to receive and respond to housing

loan opportunities and information that Facebook provided to similarly situated white potential

applicants, and accordingly suffered economic and non-economic harm.

111.    Under the California FEHA, "It shall be unlawful . . . To deny a person access to, or

membership or participation in, a multiple listing service, real estate brokerage organization, or

other service because of race [or] national origin[.]"  Gov. Code § 12955(j).

112.    Upon information and belief, by engaging in a pattern or practice of providing

marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

on behalf of Businesses that seek applicants for housing accommodations via Facebook and that use

Facebook's targeting tools to exclude which Facebook customers will receive such marketing,

recruitment, sourcing, advertising, branding, information, and/or hiring advertisements for housing

accommodations based expressly on the race or national origin (or perceived race or national

origin) of the Facebook user and based on facially neutral characteristics of the Facebook user that

have a disparate impact on African Americans, Latinos, Asian Americans, and other non-white

individuals, including the location of the Facebook user (as specific as the person's zip code) and

the user's similarity to the company's existing customers, Facebook has denied "access to . . . . or

participation in" an "other service because of race [or] national origin" in violation of Gov. Code

§ 12955(j).

113.    Upon information and belief, due to Facebook's pattern or practice Plaintiffs and

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1  members of the putative class have been denied the opportunity to receive and respond to housing

2  opportunities and information that Facebook provided to similarly situated white potential

3  applicants, and accordingly suffered economic and non-economic harm.

4      114.    Under the California FEHA, "It shall be unlawful . . . For any person to aid, abet,

5  incite, compel, or coerce the doing of any of the acts or practices declared unlawful in this section,

6  or to attempt to do so."  Gov. Code § 12955(g).

7      115.    Upon information and belief, by engaging in a pattern or practice of providing

8  marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

9  on behalf of Businesses that seek applicants for housing accommodations and/or housing loans via

10  Facebook and that use Facebook's targeting tools to exclude which Facebook customers will

11  receive such marketing, recruitment, sourcing, advertising, branding, information, and/or hiring

12  advertisements for housing accommodations and/or housing loans based expressly on the race or

13  national origin (or perceived race or national origin) of the Facebook user and based on facially

14  neutral characteristics of the Facebook user that have a disparate impact on African Americans,

15  Latinos, Asian Americans, and other non-white individuals, including the location of the Facebook

16  user (as specific as the person's zip code) and the user's similarity to the Businesses' existing

17  customers, Facebook, a "person," has aided, abetting, incited, compelled and/or coerced other

18  Businesses and persons in doing acts or practices that are unlawful under Gov. Code §12955(a), (c),

19  (i), (j), (k).

20      116.    Upon information and belief, by engaging in the same pattern or practice, Facebook

21  substantially assisted, solicited, encouraged, and/or coerced other Businesses and persons to make,

22  print, or publish or cause to be made, printed, or published notices, statements, and/or

23  advertisements with respect to the sale or rental of a housing accommodation that indicate a

24  preference, limitation, or discrimination based on race or national origin or an intention to make

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1   such a preference, limitation, or discrimination in violation of Gov. Code § 12955(c); Facebook

2   knew that such Businesses or persons were violating their duties under § 12955(c); and, as

3   described above, Facebook's own conduct violated the FEHA with respect to potential applicants

4   for housing opportunities.

5   117.   Upon information and belief, by engaging in the same pattern or practice, Facebook

6   substantially assisted, solicited, encouraged, and/or coerced other Businesses, persons, and other

7   owners of housing to "discriminate against . . . any person because of the race [or] national origin . .

8   . of that person" in violation of Gov. Code § 12955(a) and "make unavailable or deny a dwelling

9   based on discrimination because of race [or] national origin" in violation of Gov. Code. § 12955(a);

10  Facebook knew that such Businesses or persons were violating their duties under §12955(a) and

11  (k); and, as described above, Facebook's own conduct violated the FEHA with respect to potential

12  applicants for housing opportunities.

13  118.   Upon information and belief, by engaging in the same pattern or practice, Facebook

14  substantially assisted, solicited, encouraged, and/or coerced other Businesses and persons to

15  "discriminate against any person in making available a transaction, or in the terms and conditions of

16  a [real estate-related] transaction, because of race [or] national origin" in violation of Gov. Code

17  § 12955(i); Facebook knew that such Businesses or persons were violating their duties under

18  § 12955(i); and, as described above, Facebook's own conduct violated the FEHA with respect to

19  potential applicants for housing opportunities, including real estate-related transactions; and, as

20  described above, Facebook's own conduct violated the FEHA with respect to potential applicants

21  for housing opportunities.

22  119.   Upon information and belief, by engaging in the same pattern or practice, Facebook

23  substantially assisted, solicited, encouraged, and/or coerced other Businesses and persons to "deny

24  a person access to, or membership or participation in" a "service because of race [or] national origin

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

in violation of Gov. Code § 12955(j); Facebook knew that such Businesses or persons were violating their duties under § 12955(j); and, as described above, Facebook's own conduct violated the FEHA with respect to potential applicants for housing opportunities; and, as described above, Facebook's own conduct violated the FEHA with respect to potential applicants for housing opportunities.

120.    Upon information and belief, due to Facebook's aiding and abetting other Businesses, persons, and owners of housing accommodations in violating Gov. Code § 12955(a), (c), (i), (j), and (k), Plaintiffs and members of the putative class have been denied the opportunity to receive and respond to housing, real-estate related, and housing loan advertisements that Facebook provided to similarly situated white potential applicants, and accordingly suffered economic and non-economic harm.

121.    The limitations period for Plaintiffs' FEHA employment discrimination claims is one year prior to the date of the Complaint, and the limitations period for Plintiffs' FEHA employment discrimination claims is two years prior to the date of the filing of the Complaint. Gov. Code. § 12960(d); Gov. Code. § 12989.1.

**FOURTH COUNT:**
**Section 1981, 42 U.S.C. § 1981(a)**
**Discrimination in Contracts Relating to Employment, Housing, and Credit**
**(Disparate Treatment)**

122.    Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

123.    Section 1981 provides that "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

124.     Upon information and belief, by engaging in a pattern or practice of providing marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses that seek applicants for employment, housing, and credit opportunities via Facebook and that employ Facebook's targeting tools to exclude which Facebook customers will receive such marketing, recruitment, sourcing, advertising, branding, information, and/or hiring advertisements for employment, housing, and credit opportunities based expressly on race of the Facebook user, Facebook has intentionally discriminated against African Americans, Latinos, Asian Americans, and other non-white individuals based on race in in violation of Section 1981's prohibition on denying non-white citizens an equal right "to make and enforce contracts." 42 U.S.C. § 1981(a).

125.     Furthermore, Facebook's pattern or practice of providing marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses that seek applicants for employment, housing, and credit opportunities via Facebook and that use Facebook's targeting tools to exclude which Facebook customers based on a racial or ethnic group that Facebook knows or believes the user has an affinity for, is a member of, or otherwise likes constitutes disparate treatment, race-based stereotyping, and associational discrimination based on race, in violation of 42 U.S.C. § 1981(a).

126.     Upon information and belief, due to Facebook's pattern or practice Plaintiffs and members of the putative class have been denied the opportunity to make and enforce contracts relating to employment, housing, and credit that Facebook provided to similarly situated white potential applicants for employment, housing and credit, and accordingly suffered economic and non-economic harm.

127.     The limitations period for Plaintiffs' Section 1981 claims is two years.

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1

2

### FIFTH COUNT:
### Section 1982, 42 U.S.C. § 1982
### Discrimination in Housing
### (Disparate Treatment and Disparate Impact)

3

4

128.     Plaintiffs repeat and incorporate the allegations contained in the foregoing

5

paragraphs as if fully set forth herein.

6

129.     Section 1982 provides that "All citizens of the United States shall have the same

7

right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease,

8

sell, hold, and convey real and personal property."  42 U.S.C. § 1982.

9

130.     Upon information and belief, by engaging  in a pattern or practice of providing

10

marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

11

on behalf of Businesses that seek applicants for the rental, purchase or sale of housing via Facebook

12

and that employ Facebook's targeting tools to exclude which Facebook customers will receive such

13

marketing, recruitment, sourcing, advertising, branding, information, and/or hiring advertisements

14

for housing opportunities based expressly on race of the Facebook user, Facebook has intentionally

15

discriminated against African Americans, Latinos, Asian Americans and other non-white

16

individuals based on race in in violation of Section 1982's prohibition on denying non-white

17

citizens "the same right . . . to purchase, lease, sell, hold and convey real . . . property."  42 U.S.C.

18

§ 1982.

19

131.     Upon information and belief, by engaging in a pattern or practice of providing

20

marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

21

on behalf of Businesses that seek applicants for the rental, purchase, or sale of housing via

22

Facebook and that use Facebook's targeting tools to exclude which Facebook customers will

23

receive such marketing, recruitment, sourcing, advertising, branding, information, and/or hiring

24

advertisements for housing based on facially neutral characteristics of the Facebook user that have a

disparate impact on African Americans, Latinos, Asian Americans, and other non-white

- 39 -

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1   individuals, including the location of the Facebook user (as specific as the person's zip code) and

2   the user's similarity to the company's existing customers, Facebook, has engaged in disparate

3   impact discrimination in violation of Section 1982's prohibition on denying non-white citizens "the

4   same right . . . to purchase, lease, sell, hold and convey real . . . property."  42 U.S.C. § 1982.

5          132.   Furthermore, Facebook's pattern or practice of providing marketing, recruitment,

6   sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses

7   that seek applicants for housing via Facebook and that use Facebook's targeting tools to exclude

8   which Facebook customers based on a racial or ethnic group that Facebook knows or believes the

9   user has an affinity for, is a member of, or otherwise likes constitutes disparate treatment, race-

10  based stereotyping, and associational discrimination based on race, and unlawful disparate impact

11  discrimination against African American, Latino, Asian American and other non-white individuals

12  in violation of 42 U.S.C. § 1982.

13         133.   Upon information and belief, due to Facebook's pattern or practice Plaintiffs and

14  members of the putative class have been denied the right to purchase, lease, sell, hold, or convey

15  real property that Facebook provided to similarly situated white potential applicants for housing

16  opportunities, and accordingly suffered economic and non-economic harm.

17         134.   The limitations period for Plaintiffs' Section 1982 claims is two years.

18                              **SIXTH COUNT:**
                    **Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)**
19                        **(Disparate Treatment and Disparate Impact)**

20         135.   Plaintiffs repeat and incorporate the allegations contained in the foregoing

21  paragraphs as if fully set forth herein.

22         136.   The Equal Credit Opportunity Act provides that "It shall be unlawful for any creditor

23  to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the

24  basis of race [or] national origin[.]" 15 U.S.C. § 1691(a).

1      137.    Facebook is a "creditor" under the Equal Credit Opportunity Act, as Facebook

2   "regularly arranges for the extension, renewal, or continuation of credit," 15 U.S.C. § 1691a(e), and

3   "[t]he term 'person' means . . . a corporation[.]" 15 U.S.C. § 1691a(f).  "[T]he term creditor []

4   includes a person who, in the ordinary course of business, regularly refers applicants or prospective

5   applicants to creditors[.]" 12 C.F.R. § 1002.2(l).

6      138.    It is a violation of § 1691(a) for a creditor to "make any oral or written statement,

7   advertising or otherwise, to applicants or prospective applicants that would discourage on a

8   prohibited basis a reasonable person from making or pursuing an application."  12 C.F.R.

9   § 1002.4(b).

10     139.    Upon information and belief, by engaging  in a pattern or practice of providing

11  marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

12  on behalf of Businesses that seek applicants for credit transactions via Facebook and that employ

13  Facebook's targeting tools to exclude which Facebook customers will receive such marketing,

14  recruitment, sourcing, advertising, branding, information, and/or hiring advertisements for credit

15  transactions based expressly on race or national origin of the Facebook user, Facebook has

16  intentionally discriminated against African Americans, Latinos, Asian Americans, and other non-

17  white individuals in violation of 15 U.S.C. § 1691(a) by "discriminat[ing] against any applicant

18  with respect to any aspect of a credit transaction . . . on the basis of race [or] national origin[.]"  15

19  U.S.C. § 1691(a).

20     140.    Upon information and belief, by engaging in a pattern or practice of providing

21  marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

22  on behalf of Businesses that market and recruit applicants for credit transactions via Facebook and

23  that use Facebook's targeting tools to exclude which Facebook customers will receive such

24  marketing, recruitment, sourcing, advertising, branding, information, and/or hiring advertisements

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

for credit transactions based on facially neutral characteristics of the Facebook user that have a

disparate impact on African Americans, Latinos, Asian Americans, and other non-white

individuals, including the location of the Facebook user (as specific as the person's zip code) and

the user's similarity to the Businesses' existing customers, Facebook, has engaged in disparate

impact discrimination in violation of 15 U.S.C. § 1691(a) by "discriminat[ing] against any applicant

with respect to any aspect of a credit transaction . . . on the basis of race [or] national origin[.]"  15

U.S.C. § 1691(a).

141.    Upon information and belief, Facebook could have adopted a less discriminatory

alternative practice to target potential applicants for credit transactions, such as limiting any

geographic targeting to the relevant credit market and/or prohibiting creditors from targeting their

advertisements to specific zip codes.

142.    Furthermore, Facebook's pattern or practice of providing marketing, recruitment,

sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses

that seek applicants for credit opportunities via Facebook and that use Facebook's targeting tools to

exclude which Facebook customers based on a racial or ethnic group that Facebook knows or

believes the user has an affinity for, is a member of, or otherwise likes constitutes disparate

treatment, race- or national origin-based stereotyping, and associational discrimination based on

race or national origin, and unlawful disparate impact discrimination against African American,

Lation, Asian American and other non-white individuals in violation of 15 U.S.C. § 1691(a).

143.    Upon information and belief, due to Facebook's pattern or practice Plaintiffs and

members of the putative class have been denied the opportunity to receive and respond to credit

transaction opportunities that Facebook provided to similarly situated white potential applicants,

and accordingly suffered economic and non-economic harm.

144.    The limitations period for Plaintiffs' ECOA claims is five years prior to the

1  Complaint.  15 U.S.C. § 1691e(f).

2  **SEVENTH COUNT:**
**Fair Housing Act, 42 U.S.C. § 3604(a), (c), (d) & § 3605**
3  **(Disparate Treatment and Disparate Impact)**

4  145.    Plaintiffs repeat and incorporate the allegations contained in the foregoing

5  paragraphs as if fully set forth herein.

6  146.    The Fair Housing Act provides that "it shall be unlawful" "[t]o refuse to sell or rent

7  after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise

8  make unavailable or deny, a dwelling to any person because of race [or] national origin[.]" 42

9  U.S.C. § 3604(a).

10  147.     Upon information and belief, by engaging  in a pattern or practice of providing

11  marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

12  on behalf of Businesses that seek applicants for the sale or rental or dwellings via Facebook and

13  that employ Facebook's targeting tools to exclude which Facebook customers will receive such

14  marketing, recruitment, sourcing, advertising, branding, information, and/or hiring advertisements

15  for housing opportunities based expressly on race or national origin of the Facebook user, Facebook

16  has intentionally discriminated against African Americans, Latinos, Asian Americans, and other

17  non-white individuals by refusing to negotiate for the sale or rental of a dwelling or by otherwise

18  making unavailable or denying a dwelling to persons because of race or national origin.  42 U.S.C.

19  § 3604(a).

20  148.     Upon information and belief, by engaging in a pattern or practice of providing

21  marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

22  on behalf of Businesses that seek applicants for the sale or rental of dwellings via Facebook and

23  that use Facebook's targeting tools to exclude which Facebook customers will receive such

24  marketing, recruitment, sourcing, advertising, branding, information, and/or hiring advertisements

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1  for housing opportunities based on facially neutral characteristics of the Facebook user that have a

2  disparate impact on African Americans, Lations, Asian Americans, and other non-white

3  individuals, including the location of the Facebook user (as specific as the person's zip code) and

4  the user's similarity to the company's existing customers, Facebook, has engaged in disparate

5  impact discrimination in violation of Section 3604(a)'s prohibition on refusing to negotiate for the

6  sale or rental of a dwelling or by otherwise making unavailable or denying a dwelling to persons

7  because of race or national origin.  42 U.S.C. § 3604(a).

8      149.   Facebook's pattern or practice of expressly excluding non-white individuals from

9  receiving housing advertisements and excluding Facebook users from receiving housing

10 advertisements based on facially neutral characteristics of the Facebook user that have a disparate

11 impact on African Americans, Latinos, Asian Americans, and other non-white individuals

12 "[d]iscourag[es] any person from inspecting, purchasing or renting a dwelling because of race [or]

13 national origin . . . or because of the race [or] national origin of persons in a community,

14 neighborhood or development, 24 C.F.R. § 100.70(c)(1), and involves "[e]mploying codes or other

15 devices to segregate or reject applicants, purchasers or renters, refusing to take or to show listings

16 of dwellings in certain areas because of race [or] national origin," 24 C.F.R. § 100.70(d)(2),

17 practices that violate 42 U.S.C. § 3604(a).

18     150.   Upon information and belief, Facebook could have adopted a less discriminatory

19 alternative practice to target potential applicants to purchase or rent a dwelling, such as limiting any

20 geographic targeting to the relevant housing market and/or prohibiting housing providers from

21 targeting housing advertisements to specific zip codes.

22     151.   Furthermore, Facebook's pattern or practice of providing marketing, recruitment,

23 sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses

24 that seek applicants for housing via Facebook and that use Facebook's targeting tools to exclude

1    which Facebook customers based on a racial or ethnic group that Facebook knows or believes the

2    user has an affinity for, is a member of, or otherwise likes constitutes disparate treatment, race- or

3    national origin-based stereotyping, and associational discrimination based on race or national

4    origin, and unlawful disparate impact discrimination against African American, Latino, Asian

5    American, and other non-white individuals in violation of 42 U.S.C. § 3604(a).

6           152.    Upon information and belief, due to Facebook's pattern or practice Plaintiffs and

7    members of the putative class have been denied the opportunity to receive and respond to housing

8    opportunities that Facebook provided to similarly situated white potential applicants, and

9    accordingly suffered economic and non-economic harm.

10          153.    The Fair Housing Act provides that "it shall be unlawful" "[t]o make, print, or

11   publish, or cause to be made, printed, or published any notice, statement, or advertisement, with

12   respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination

13   based on race [or] national origin, . . . or an intention to make any such preference, limitation, or

14   discrimination."  42 U.S.C. § 3604(c).

15          154.    Facebook is a "person" that is subject to the provisions of the Fair Housing Act, as a

16   "'Person' includes one or more . . . corporations[.]"  42 U.S.C. § 3602(d).

17          155.    Upon information and belief, by engaging in a pattern or practice of providing

18   marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

19   on behalf of Businesses that seek applicants for sale and rental dwellings via Facebook and that use

20   Facebook's targeting tools to exclude which Facebook customers will receive such marketing and

21   recruitment advertisements for sale and rental dwellings based expressly on the race or national

22   origin of the Facebook user and based on facially neutral characteristics of the Facebook user that

23   have a disparate impact on African Americans, Latinos, Asian Americans, and other non-white

24   individuals, including the location of the Facebook user (as specific as the person's zip code) and

- 45 -                                    FIRST AMENDED COMPLAINT
                                          Case No. 16-cv-06440-EJD

the user's similarity to the company's existing customers, Facebook has made, printed, published, or caused to be published notices, statements, and/or advertisements that indicate a preference, limitation, and/or discrimination based on race or national origin or an intention to make such preference, limitation, or discrimination.  42 U.S.C. § 3604(c).

156.    Under HUD's regulations, the prohibitions of 42 U.S.C. § 3604(c) "apply to all written or oral notices or statements by a person engaged in the sale or rental of a dwelling," and "include any applications, flyers, brochures, deeds, signs, banners, posters, billboards or any documents used with respect to the sale or rental of a dwelling."  24 C.F.R. § 100.75(b).

157.    "Discriminatory notices, statements, and advertisements, include . . . Selecting media or locations for advertising the sale or rental of dwellings which deny particular segments of the housing market information about housing opportunities because of race [or] national origin[.]"  24 C.F.R. § 100.75(c)(3).  Facebook's pattern or practice of expressly excluding non-white individuals from receiving housing advertisements and excluding Facebook users from receiving housing advertisements based on facially neutral characteristics of the Facebook user that have a disparate impact on African Americans, Latinos, Asian Americans, and other non-white individuals involves "selecting locations for advertising the sale or rental of dwellings that denies" these "segments of the housing market information about housing opportunities because of race [or] national origin[.]"  *Id.*  In addition, the same pattern or practice involves "[r]efusing to publish advertising for the sale or rental of dwellings . . . because of race [or] national origin," another practice that violates 42 U.S.C. § 3604(c).  24 C.F.R. § 100.75(c)(4).

158.    Furthermore, Facebook's pattern or practice of providing marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses that seek applicants for housing via Facebook and that use Facebook's targeting tools to exclude which Facebook customers based on a racial or ethnic group that Facebook knows or believes the

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1  user has an affinity for, is a member of, or otherwise likes constitutes disparate treatment, race- or

2  national origin-based stereotyping, and associational discrimination based on race or national

3  origin, and unlawful disparate impact discrimination against African American, Latino, Asian

4  American, and other non-white individuals in violation of 42 U.S.C. § 3604(c).

5      159.    Upon information and belief, due to Facebook's pattern or practice Plaintiffs and

6  members of the putative class have been denied the opportunity to receive and respond to housing

7  advertisements that Facebook provided to similarly situated white potential applicants, and

8  accordingly suffered economic and non-economic harm.

9      160.    The Fair Housing Act provides that "it shall be unlawful" "[t]o represent to any

10  person because of race [or] national origin . . . that any dwelling is not available for inspection, sale,

11  or rental when such dwelling is in fact so available." 42 U.S.C. § 3604(d).

12      161.    Section 3604(d) makes it unlawful "to provide inaccurate . . . information about the

13  availability of dwellings for sale or rental," 24 C.F.R. § 100.80(a), and prohibits the "[l]imiting

14  information, by word or conduct, regarding suitably priced dwellings available for inspection, sale

15  or rental, because of race [or] national origin." 24 C.F.R. § 100.80(b)(4).

16      162.    Upon information and belief, by engaging  in a pattern or practice of providing

17  marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

18  on behalf of Businesses that seek applicants for the sale or rental or dwellings via Facebook and

19  that employ Facebook's targeting tools to exclude which Facebook customers will receive such

20  marketing, recruitment, sourcing, advertising, branding, information, and/or hiring advertisements

21  for housing opportunities based expressly on race or national origin of the Facebook user, Facebook

22  has intentionally discriminated against African Americans, Latinos, Asian Americans, and other

23  non-white individuals in violation of 42 U.S.C. § 3604(d) by limiting information by words and

24  conduct regarding suitably priced dwellings for sale or rental because of race or national origin.  24

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1   C.F.R. § 100.80(b)(4).

2       163.    Upon information and belief, by engaging in a pattern or practice of providing

3   marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

4   on behalf of Businesses that seek applicants for the sale or rental of dwellings via Facebook and

5   that use Facebook's targeting tools to exclude which Facebook customers will receive such

6   marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services

7   advertisements for housing opportunities based on facially neutral characteristics of the Facebook

8   user that have a disparate impact on African Americans, Latinos, Asian Americans, and other non-

9   white individuals, including the location of the Facebook user (as specific as the person's zip code)

10   and the user's similarity to the company's existing customers, Facebook, has engaged in disparate

11   impact discrimination in violation of 42 U.S.C. § 3604(d) by limiting information by words and

12   conduct regarding suitably priced dwellings for sale or rental because of race national origin.  24

13   C.F.R. § 100.80(b)(4).

14       164.    Upon information and belief, Facebook could have adopted a less discriminatory

15   alternative practice to target potential applicants to purchase or rent a dwelling, such as limiting any

16   geographic targeting to the relevant housing market and/or prohibiting housing providers from

17   targeting housing advertisements to specific zip codes.

18       165.    Furthermore, Facebook's pattern or practice of providing marketing, recruitment,

19   sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses

20   that seek applicants for housing via Facebook and that use Facebook's targeting tools to exclude

21   which Facebook customers based on a racial or ethnic group that Facebook knows or believes the

22   user has an affinity for, is a member of, or otherwise likes constitutes disparate treatment, race- or

23   national origin-based stereotyping, and associational discrimination based on race or national

24   origin, and unlawful disparate impact discrimination against African American, Latino, Asian

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1   American and other non-white individuals in violation of 42 U.S.C. § 3604(d).

2   166.   Upon information and belief, due to Facebook's pattern or practice Plaintiffs and

3   members of the putative class have been denied the opportunity to receive and respond to housing

4   opportunities that Facebook provided to similarly situated white potential applicants, and

5   accordingly suffered economic and non-economic harm.

6   167.   The Fair Housing Act provides that "It shall be unlawful for any person or other

7   entity whose business includes engaging in residential real estate-related transactions to

8   discriminate against any person in making available such a transaction[.]"  42 U.S.C. § 3605(s).

9   168.   Facebook is also a person "whose business includes engaging in residential real

10   estate-related transactions," 42 U.S.C. § 3605(a), as Facebook is routinely involved in marketing or

11   advertising loans for "purchasing, constructing, improving, repairing, or maintaining" dwellings

12   and/or marketing or advertising residential real property.  42 U.S.C. § 3605(b).

13   169.   Upon information and belief, by engaging  in a pattern or practice of providing

14   marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

15   on behalf of Businesses that seek applicants for residential housing loans via Facebook and that

16   employ Facebook's targeting tools to exclude which Facebook customers will receive such

17   marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services

18   advertisements for residential housing loans based expressly on race or national origin of the

19   Facebook user, Facebook has intentionally discriminated against African Americans, Latinos, Asian

20   Americans and other non-white individuals in violation of 42 U.S.C. § 3605(a) by "discriminat[ing]

21   against any person in making available" "residential real estate-related transactions[.]"  42 U.S.C.

22   § 3605(a).

23   170.   Upon information and belief, by engaging in a pattern or practice of providing

24   marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1   on behalf of Businesses that seek applicants for residential housing loans via Facebook and that use

2   Facebook's targeting tools to exclude which Facebook customers will receive such marketing,

3   recruitment, sourcing, advertising, branding, information, and/or hiring services advertisements for

4   residential housing loans based on facially neutral characteristics of the Facebook user that have a

5   disparate impact on African Americans, Latinos, Asian Americans, and other non-white

6   individuals, including the location of the Facebook user (as specific as the person's zip code) and

7   the user's similarity to the company's existing customers, Facebook, has engaged in disparate

8   impact discrimination in violation of 42 U.S.C. § 3605(a) by "discriminat[ing] against any person in

9   making available" "residential real estate-related transactions[.]"  42 U.S.C. § 3605(a).

10          171.    Facebook's pattern or practice of expressly excluding non-white individuals from

11   receiving residential housing loans and excluding Facebook users from receiving residential

12   housing loans based on facially neutral characteristics of the Facebook user that have a disparate

13   impact on African Americans, Latinos, Asian Americans, and other non-white individuals violates

14   42 U.S.C. § 3605(a), because such pattern or practice constitutes "[f]ailing or refusing to provide to

15   any person information regarding the availability of loans or other financial assistance, application

16   requirements, procedures or standards for the review and approval of loans or financial assistance,

17   or providing information which is inaccurate or different from that provided others, because of race

18   [or] national origin," 24 C.F.R. § 100.120(b)(1), and constitutes the "failing to provide . . . the

19   receipt of loans or other financial assistance in a manner that . . . discriminates in their availability

20   because of race [or] national origin[.]"  24 C.F.R. § 100.120(b)(2).

21          172.    Upon information and belief, Facebook could have adopted a less discriminatory

22   alternative practice to target potential applicants for residential housing loans, such as limiting any

23   geographic targeting to the relevant housing market and/or prohibiting the providers of residential

24   housing loans from targeting their advertisements to specific zip codes.

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

173.    Furthermore, Facebook's pattern or practice of providing marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses that seek applicants for residential housing loans via Facebook and that use Facebook's targeting tools to exclude which Facebook customers based on a racial or ethnic group that Facebook knows or believes the user has an affinity for, is a member of, or otherwise likes constitutes disparate treatment, race- or national origin-based stereotyping, and associational discrimination based on race or national origin, and unlawful disparate impact discrimination against African American, Latino, Asian American, and other non-white individuals in violation of 42 U.S.C. § 3605(a).

174.    Upon information and belief, due to Facebook's pattern or practice Plaintiffs and members of the putative class have been denied the opportunity to receive and respond to residential housing loan opportunities and information that Facebook provided to similarly situated white potential applicants, and accordingly suffered economic and non-economic harm.

175.    The limitations period for Plaintiffs' FHA claims is two years prior to the Complaint. 42 U.S.C. § 3613(a)(1).

**EIGHTH COUNT:**
**Title VII of the Federal Civil Rights Act, 42 U.S.C. § 2000e-2(b) & § 2000e-3(b)**
**(Disparate Treatment and Disparate Impact)**

176.    Plaintiffs repeat and incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

177.    Title VII provides that "It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race [or] national origin . . . or to classify or refer for employment any individual on the basis of his race [or] national origin." 42 U.S.C. § 2000e-2(b).

178.    As described above, Facebook is an employment agency within the meaning of Title VII, 42 U.S.C. § 2000e(c), as it regularly receives compensation from employers to place

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1    advertisements—and provide related marketing, recruitment, sourcing, advertising, branding,

2    information, and/or hiring services—for employers to recruit applicants for employment and

3    encourage them to apply for employment with such employers.

4         179.    Upon information and belief, by engaging in a pattern or practice of providing

5    marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

6    on behalf of Businesses that seek applicants for employment via Facebook and that use Facebook's

7    targeting tools to exclude which Facebook customers will receive such marketing and recruitment

8    advertisements for employment based expressly on the race or national origin of the Facebook user,

9    Facebook, an employment agency, has intentionally discriminated against African Americans,

10   Latinos, Asian Americans, and other non-white Americans by failing or refusing to refer for

11   employment, otherwise discriminating against and classifying or referring for employment such

12   individuals based on their race or national origin.

13        180.    Upon information and belief, by engaging in a pattern or practice of providing

14   marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and

15   on behalf of Businesses that seek applicants for employment via Facebook and that use Facebook's

16   targeting tools to exclude which Facebook customers will receive such marketing, recruitment,

17   sourcing, advertising, branding, information, and/or hiring advertisements for employment based on

18   facially neutral characteristics of the Facebook user that have a disparate impact on African

19   Americans, Latinos, Asian Americans, and other non-white individuals, including the location of

20   the Facebook user (as specific as the person's zip code) and the user's similarity to the company's

21   existing customers, Facebook, has engaged in disparate impact discrimination resulting in the

22   failure or refusal to refer for employment, otherwise discriminate, and classify or refer for

23   employment African Americans, Latinos, Asian Americans, and other non-white individuals based

24   on their race or national origin.

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

181.    Upon information and belief, Facebook could have adopted alternative employment practices to target potential applicants or employees for employers, such as limiting any geographic targeting to the relevant labor market and/or prohibiting employers from targeting employment advertisements to specific zip codes.

182.    Furthermore, Facebook's pattern or practice of providing marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses that seek applicants for employment via Facebook and that use Facebook's targeting tools to exclude which Facebook customers based on a racial or ethnic group that Facebook knows or believes the user has an affinity for, is a member of, or otherwise likes constitutes disparate treatment, race- or national origin-based stereotyping, and associational discrimination based on race or national origin, and unlawful disparate impact discrimination against African American, Latino, Asian American and other non-white individuals in violation of 42 U.S.C. § 2000e-2(b).

183.    Upon information and belief, due to Facebook's pattern or practice Plaintiffs and members of the putative class have been denied the opportunity to receive and respond to employment advertisements that Facebook provided to similarly situated white potential applicants, and accordingly suffered economic and non-economic harm.

184.    Title VII provides that "It shall be an unlawful employment practice for an employer" or an "employment agency, . . . to print or publish or cause to be printed or published any notice or advertisement relating to employment by such an employer . . .  or relating to any classification or referral for employment by such an employment agency, . . . indicating any preference, limitation, specification, or discrimination, based on race [or] national origin."  42 U.S.C. § 2000e-3(b).

185.    Facebook is an "employment agency" under Title VII, as Facebook is a "person" who "regularly undertak[es] with or without compensation to procure employees for an employer or

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

to procure for employees opportunities to work for an employer and includes an agent of such a person."  42 U.S.C. § 2000e(c).  A "person" under Title VII "includes" "corporations" like Facebook.  42 U.S.C. § 2000e(a).  Upon information and belief, Facebook regularly receives compensation from employers to place advertisements for employers—and provide related marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services—to recruit applicants for employment and encourage them to apply for employment with such employers.

186.    Upon information and belief, by engaging in a pattern or practice of providing marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses that seek applicants for employment via Facebook and that use Facebook's targeting tools to exclude which Facebook customers will receive such marketing, recruitment, sourcing, advertising, branding, information, and/or hiring advertisements for employment based expressly on the race or national origin of the Facebook user and based on facially neutral characteristics of the Facebook user that have a disparate impact on African Americans, Latinos, Asian Americans, and other non-white individuals, including the location of the Facebook user (as specific as the person's zip code) and the user's similarity to the company's existing customers, Facebook, an employment agency, has printed or published notices or advertisements relating to employment by employers and/or relating to classification or referral for employment that indicate a preference, limitation, specification or discrimination based on race or national origin and has thereby harmed African American, Latinos, Asian American and other non-white individuals who are denied employment opportunities.

187.    Furthermore, Facebook's pattern or practice of providing marketing, recruitment, sourcing, advertising, branding, information, and/or hiring services for and on behalf of Businesses that seek applicants for employment via Facebook and that use Facebook's targeting tools to

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD

1   exclude which Facebook customers based on a racial or ethnic group that Facebook knows or

2   believes the user has an affinity for, is a member of, or otherwise likes constitutes disparate

3   treatment, race- or national origin-based stereotyping, and associational discrimination based on

4   race or national origin, and unlawful disparate impact discrimination against African American,

5   Latino, Asian American and other non-white individuals in violation of 42 U.S.C. § 2000e-3(b).

6          188.    Upon information and belief, due to Facebook's pattern or practice Plaintiffs and

7   members of the putative class have been denied the opportunity to receive and respond to

8   employment advertisements that Facebook provided to similarly situated white potential applicants,

9   and accordingly suffered economic and non-economic harm.

10         189.    The limitations period for Plaintiffs' Title VII claims is two years prior to the date

11  that the first charge was filed.  42 U.S.C. § 2000e-5(e)(3)

12                             **<u>PRAYER FOR RELIEF</u>**

13         WHEREFORE, Plaintiffs pray that judgment be entered against Facebook on all claims and

14  respectfully requests that this Court award the following relief:

15         A.     Declare that Facebook's pattern or practice described above violations Title
               VII, the Fair Housing Act, the Equal Credit Opportunity Act, Section 1981,
16             Section 1982, FEHA, the Unfair Competition Law, and the Unruh Civil
               Rights Act.

17
18         B.     Enter an order enjoining Facebook from continuing to engage in acts that
               violate the same federal and state statutes.

19         C.     Certify a Class under Rule 23(a) and (b)(2) and (b)(3) of the Federal Rules of
               Civil procedure, appoint Plaintiffs' counsel as Class Counsel, and appoint the
20             named Plaintiffs as the Class Representatives.

21         D.     Require Facebook to pay members of the Class for the economic harm they
               have suffered due to the denial of employment, housing, and credit
22             opportunities, as well as punitive damages.

23         E.     Require Facebook to pay Plaintiffs' attorneys' fees and costs.

24         F.     Grant such other and further relief as the Court deems proper, appropriate,
               just, or equitable.

1    Dated:  February 13, 2017              Respectfully submitted,

2                                           By:    _/s/ Jahan C. Sagafi_____
                                                     Jahan C. Sagafi
3
                                           Jahan C. Sagafi (State Bar No. 224887)
4                                          OUTTEN & GOLDEN LLP
                                           One Embarcadero Center, 38th Floor
5                                          San Francisco, CA 94111
                                           Telephone: (415) 638-8800
6                                          Facsimile: (415) 638-8810
                                           E-mail: jsagafi@outtengolden.com
7
                                           Adam T. Klein (admitted *pro hac vice*)
8                                          OUTTEN & GOLDEN LLP
                                           685 Third Avenue, 25th Floor
9                                          New York, New York 10017
                                           Telephone:  (212) 245-1000
10                                         Facsimile:  (646) 509-2060
                                           E-mail: atk@outtengolden.com
11
                                           P. David Lopez (admitted *pro hac vice*)
12                                         Peter Romer-Friedman (admitted *pro hac vice*)
                                           OUTTEN & GOLDEN LLP
13                                         601 Massachusetts Ave. NW
                                           Second Floor West
14                                         Washington, DC 20001
                                           Telephone: (202) 847-4400
15                                         Facsimile: (646) 952-9114
                                           E-mail: pdl@outtengolden.com
16                                         E-mail: prf@outtengolden.com

17                                         William Most (State Bar No. 279100)
                                           LAW OFFICE OF WILLIAM MOST
18                                         201 St. Charles Ave., Ste. 114, # 101
                                           New Orleans, LA 70170
19                                         Phone: (504) 509-5023
                                           Email: williammost@gmail.com
20

21

22

23

24

FIRST AMENDED COMPLAINT
                                           Case No. 16-cv-06440-EJD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Jason R. Flanders (State Bar No. 238007)
Sarah M.K. Hoffman (State Bar No. 308568)
AQUA TERRA AERIS LAW GROUP
828 San Pablo Ave., Ste. 115B
Albany, CA 94706
Phone:  (916) 202-3018
Email: jrf@atalawgroup.com
Email: smkh@atalawgroup.com

*Attorneys for Plaintiffs and Proposed Class
Members*

FIRST AMENDED COMPLAINT
Case No. 16-cv-06440-EJD