Jahan C. Sagafi (Cal. Bar No. 224887)
Relic Sun (Cal. Bar No. 306701)
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile:  (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: rsun@outtengolden.com

William Most (Cal. Bar No. 279100)
LAW OFFICE OF WILLIAM MOST
637 Kerlerec St.
New Orleans, LA 70116
Phone: 504-509-5023
E-mail: williammost@gmail.com

Jason R. Flanders (Cal. Bar No. 238007)
Sarah M.K. Hoffman (Cal. Bar No. 308568)
AQUA TERRA AERIS LAW GROUP
828 San Pablo Ave., Ste. 115B
Albany, CA 94706
Phone: 916-202-3018
E-mail: jrf@atalawgroup.com
E-mail: smkh@atalawgroup.com

Adam T. Klein (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone:  (212) 245-1000
Facsimile:  (646) 509-2060
E-mail: atk@outtengolden.com

P. David Lopez (admitted *pro hac vice*)
Peter Romer-Friedman (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001
Telephone: (202) 847-4400
Facsimile: (646) 952-9114
E-mail: pdl@outtengolden.com
E-mail: prf@outtengolden.com

*Attorneys for Plaintiffs and proposed Class Members*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| SUZANNE-JULIETTE MOBLEY, DANIEL ADRIAN MANRIQUEZ, and VICTOR ONUOHA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 16-cv-06440-EJD<br><br>**PLAINTIFFS' OPPOSITION TO FACEBOOK'S REQUEST FOR JUDICIAL NOTICE**<br><br>Judge: Hon. Edward J. Davila |

**INTRODUCTION**

The Court should deny Facebook, Inc.'s ("Facebook") Request for Judicial Notice in Support of its Motion to Dismiss. ECF No. 34-1. Although this proposed class action asserts civil rights claims dating back many years, Facebook asks the Court to consider single copies of Facebook's "Advertising Policies" (ECF No. 34-2 at 4; "Exhibit A") and "Discriminatory Practices" (ECF No. 34-2 at 6-14; "Exhibit B") taken from its website at a single moment in time as evidence that "Facebook *requires all advertisers to comply with* its Advertising Policies, which have *always* prohibited advertisers from using the Ad Platform to engage in unlawful discrimination." ECF No. 34 at 3 (emphasis added). There is no date information on either document stating when they have been or were in effect. Facebook states that these two documents were printed from its website on April 3, 2017. ECF No. 34-2 at 2.

However, we do not know if those policies have "always" prohibited certain conduct because Facebook only provides single undated copies of the policies posted on its website at one particular moment in time. And we do not know whether and how Facebook "requires" (or has, during the liability period, required) "all advertisers to comply" with those policies.

Judicial notice would be inappropriate because (1) the First Amended Complaint ("FAC" or "Complaint")), ECF No. 28, does not refer to or rely on the documents, (2) the documents are irrelevant to whether Facebook actually engaged in the discrimination alleged by Plaintiffs, and (3) Facebook admits that it changed its advertising and discrimination policies in December 2016. *See* ECF No. 34 at 3 n.2 ("Since December 2016, targeting based on ethnic affinity categories for ads offering housing, employment or credit opportunities has been disallowed.") (citing Facebook website). Facebook does not provide copies of the policies from before April 3, 2017.

The Ninth Circuit has set a very high bar for consideration of documents outside of the complaint when a court is ruling on a motion to dismiss, since such a motion challenges the legal sufficiency of the complaint. Facebook's request fails all three requirements of the Ninth Circuit's standard, because (1) the complaint does not refer to the documents, (2) there is no reason to believe that the documents are authentic during the time period for which Facebook asks the Court to consider them, and (3) the documents are not relevant to the pending motion.

**ARGUMENT**

Facebook argues that Exhibits A and B can be considered under the doctrine of incorporation by reference. ECF No. 34-1 at 2 (citing *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)). In addition to the Ninth Circuit's decision in *Coto Settlement* that sets forth the standard for incorporation by reference, Facebook cites two district court decisions that applied the doctrine of incorporation by reference to permit the consideration of documents from companies' websites where the incorporation by reference test was satisfied. *See id.* at 2 (citing *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1025 (N.D. Cal. 2014), and *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 983-84 (N.D. Cal. 2010)). Facebook does not suggest or argue that its request for judicial notice relies upon a standard or doctrine other than incorporation by reference. Nor does it identify any case that actually holds that a document can be considered at the pleading stage merely because it is on a public website (including, as here, the defendant's own website).

As the Ninth Circuit explained in *Coto Settlement*, to apply the incorporation by reference doctrine, a defendant must satisfy a three-prong test:

> [1] the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, [2] the document's authenticity is not in question and [3] there are no disputed issues as to the document's relevance.

*Coto Settlement*, 593 F.3d at 1038 (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005), *inter alia*). Facebook's request fails each of these three requirements.

**1. Requirement One: The Complaint Does Not Rely on the Two Documents Offered by Facebook.**

The Court cannot consider the documents at the pleading stage because Facebook cannot show that "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint[.]" *Coto Settlement*, 593 F.3d at 1038. Facebook does not describe how the Complaint refers to or relies upon Exhibits A and B or how the contents of Exhibits A and B are alleged in the Complaint. As such, it has waived this argument by not making it in its opening brief. In any event, Facebook would be wrong—and be disregarding controlling precedent—if it had made such an argument.

For a defendant to show that a Complaint "necessarily relies" upon a document, it must show that "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and

(3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

First, the complaint does not "refer[] to the document," as it does not mention or cite these specific policies in any way. *Id.*

Second, these two exhibits are not "central to plaintiff[s'] claim[s]," because Plaintiffs' claims focus on Facebook's actual conduct – how its advertising platform functions, what features it has, and how they are used in practice – not on Facebook's view of its policies in Exhibits A and B or how Facebook describes them to advertisers. *Id.*; *see, e.g.*, *Marble Bridge Funding Grp., Inc. v. Liquid Capital Exch., Inc.*, No. 15 Civ. 00177, 2015 WL 5654844, at *3 n.1 (N.D. Cal. Sept. 25, 2015) (Davila, J.) (finding a complaint necessarily relied upon a document because the complaint "reference[d] [the document] extensively as a basis for its allegations").

This is not a situation where, for instance, a complaint expressly refers to an agreement to allege that a defendant violated its terms or a document that shows the defendant committed fraud. *See, e.g.*, *Morici v. Hashfast Techs. LLC*, No. 14 Civ. 00087, 2015 WL 4880670, at *4 (N.D. Cal. Aug. 14, 2015) (Davila, J.) (document incorporated where plaintiff "expressly refers to the document in the FAC . . . as part of his fraud allegations"); *May v. Semblant, Inc.*, No. 13 Civ. 01576, 2013 WL 5423614, at *2 (N.D. Cal. Sept. 27, 2013) (Davila, J.) (written contract incorporated where "written contract is referenced several times in Plaintiff's Complaint and Plaintiff asserts that the terms of the verbal offer . . . control over the terms of the written offer"); *cf. In re Domestic Airline Travel Antitrust Litig.*, No. 15 Civ. 1404, 2016 WL 6426366, at *14 (D.D.C. Oct. 28, 2016) (document not incorporated was unlike a "copy of a contract underlying a complaint asserting a breach of contract").

Moreover, fatal to Facebook's request, a complaint cannot rely on a document that is created *after* the complaint was filed. *Marder*, 450 F.3d at 448 (holding a letter "created after [plaintiff's] complaint was filed . . . could not have possibly been a document upon which her complaint 'necessarily relie[d]'"); *Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1193 n.5 (N.D. Cal. 2012) (Davila, J.) (rejecting incorporation by reference where the "screenshot itself was created after the FAC was filed"; "[t]hus, the complaint does not refer to the document"). And here, there is no indication or evidence that

the documents Facebook asks the Court to consider were created before the Complaint was filed. In fact, the most that can be discerned from Facebook's request is that they existed on April 3, 2017, months after the original complaint and the FAC were filed on November 3, 2016 and February 13, 2017, respectively. ECF No. 34-2 at 2.

Furthermore, because there is a dispute over what Facebook's advertising and discrimination policies actually said before April 3, 2017, "[i]t is therefore inappropriate to consider the record as an incorporated supplement to the FAC." *Ellis v. Phillips & Cohen Assocs., Ltd.*, No. 14 Civ. 05539, 2015 WL 4396375, at *4 (N.D. Cal. July 17, 2015) (Davila, J.) (citing *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011)).

Third, as noted below in Section 2, Plaintiffs do question the authenticity of the documents for any period before April 3, 2017, the date Facebook printed them out and filed them in this case.

For those three reasons, the first requirement of the Ninth Circuit test – whether the complaint necessarily relies on the documents being proffered – is not met.

**2.    Requirement Two: The Authenticity of the Documents Is in Question.**

Given that Facebook concedes that it changed these policies in December 2016 (and perhaps other times as well), it is impossible for Plaintiffs to know whether these documents are authentic at any point before April 3, 2017. And to the extent that Facebook offers Exhibits A and B as proof of what it has "always" done or what it actually "requires" advertisers to do, those documents are not authentic evidence. Because "the document[s'] authenticity" is "in question," the Court cannot find that the documents are incorporated by reference. *Coto Settlement*, 593 F.3d at 1038.

**3.    Requirement Three: Facebook's Documents Are Irrelevant To Resolving the Motion to Dismiss.**

Most important, for two independent reasons, there are "disputed issues as to the document[s'] relevance." *Id.* This dispute bars their consideration at the pleading stage. *Id.*

First, regardless of the date of these documents, Plaintiffs dispute their relevance. Facebook relies on these policies as proposed evidence that it does not discriminate (or has not discriminated) against people of color. *Id.* But a formal policy asking others not to discriminate is not relevant to whether the defendant itself discriminated. *See, e.g.*, *Pittsburg Press Co. v. Pittsburgh Comm'n on*

*Human Rel.*, 4 Pa. Cmwlth. 448, 461-62 (1972), *aff'd*, 413 U.S. 376 (1973) ("We have long passed that point in the advancement of civil rights whereby a declaration of intent" in a "disclaimer" "can be used as a screen or defense for actual discrimination.").

Second, Facebook's documents are irrelevant because it is unclear when they have applied, and Facebook admits that they did not apply at the time the action was filed. Plaintiffs allege that dating back years before the action was filed, Facebook has engaged in a pattern or practice of discriminatory recruitment for and advertising of employment, housing, and credit opportunities; Plaintiffs seek to represent a class of people of color who were denied economic opportunities by Facebook for several years before the filing of the action. *See* FAC ¶¶ 59, 82, 121, 127, 134, 144, 175, 189. For Facebook to prevail on its motion to dismiss, Facebook must show that prior to the commencement of this action, it did not violate any of the relevant federal or state laws or that it was immune from liability before the action was filed. Therefore, documents or policies created or altered by Facebook *after* the complaint was filed are irrelevant to the Court's resolution of the motion to dismiss.

*Both* of the documents that Facebook seeks to introduce at the pleading stage (Exhibits A and B) are undated, and Facebook makes no effort to identify *when* they were created. And Facebook itself states that it changed its policies in December 2016, after the complaint was filed, but before Exhibits A and B were printed out from its website. *See* ECF No. 34 at 3 & n.2.[1] At the appropriate time in discovery, Facebook can produce all applicable policies, and the parties can agree on or litigate the meaning of those policies. By themselves, Exhibits A and B do not support Facebook's assertion that it has "always" adhered to these policies, because they simply capture a snapshot of a moment in time (April 3, 2017), months after the Complaint was filed.

Furthermore, Exhibits A and B do not support Facebook's assertion about what it actually, in practice, "requires all advertisers to comply with." ECF No. 34 at 3. Compliance is a separate question for exploration in discovery. These open questions are helpful reminders of why the Ninth Circuit has set such a high bar for the introduction of extraneous material for consideration at the pleading stage.

---

[1] Whether Facebook actually changed its policies in December 2016 and in what ways it did so will be subjects of discovery.

**CONCLUSION**

Facebook fails to meet the Ninth Circuit's three-part test for incorporation by reference, because (1) the complaint does not rely on the documents; (2) the documents' authenticity is in question; and (3) the documents' relevance is a disputed issue. Therefore, Facebook's request for judicial notice should be denied.

Dated: May 18, 2017

Respectfully submitted,

By: /s/          *Jahan C. Sagafi*
          Jahan C. Sagafi

Jahan C. Sagafi (Cal. Bar No. 224887)
Relic Sun (Cal. Bar No. 306701)
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile:  (415) 638-8810
E-mail: jsagafi@outtengolden.com
E-mail: rsun@outtengolden.com

Adam T. Klein (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone:  (212) 245-1000
Facsimile:  (646) 509-2060
E-mail: atk@outtengolden.com

P. David Lopez (admitted *pro hac vice*)
Peter Romer-Friedman (admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001
Telephone: (202) 847-4400
Facsimile: (646) 952-9114
E-mail: pdl@outtengolden.com
E-mail: prf@outtengolden.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

William Most (Cal. Bar No. 279100)
LAW OFFICE OF WILLIAM MOST
637 Kerlerec St.
New Orleans, LA 70116
Phone: 504-509-5023
E-mail: williammost@gmail.com

Jason R. Flanders (Cal. Bar No. 238007)
Sarah M.K. Hoffman (Cal. Bar No. 308568)
AQUA TERRA AERIS LAW GROUP
828 San Pablo Ave., Ste. 115B
Albany, CA 94706
Phone: 916-202-3018
E-mail: jrf@atalawgroup.com
E-mail: smkh@atalawgroup.com

*Attorneys for Plaintiffs and Proposed Class Members*