ALEX G. TSE (CABN 152348)
United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
Assistant United States Attorney
    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6925
    FAX: (415) 436-6748
    sara.winslow@usdoj.gov
Attorneys for The United States of America

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| ONUOHA, et al., | ) |
|     Plaintiffs, | ) C 16-06440-EJD |
| v. | ) |
| FACEBOOK, INC., | ) **UNITED STATES' STATEMENT OF INTEREST** |
|     Defendant. | ) |

    The United States respectfully submits this Statement of Interest, pursuant to 28 U.S.C. § 517,[1] to advise the Court of its position regarding the argument by Defendant Facebook, Inc. (Facebook) that it is immune from liability under the various statutes cited in the First Amended Complaint, including the Fair Housing Act (FHA), 42 U.S.C. §§ 3601, *et seq.* Facebook's motion to dismiss (ECF No. 34) involves significant questions regarding the application of the FHA. The Department of Justice and the Department of Housing and Urban Development (HUD) share responsibility for enforcement of the FHA. *See, e.g.,* 42 U.S.C. §§ 3610, 3612, 3614. The United States therefore has an interest in the

---

[1] Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States." The United States is therefore filing this Statement of Interest rather than submitting a request for leave to file an amicus brief, pursuant to the Court's September 21, 2018 Order (ECF No. 74). However, to the extent the Court determines such leave is required, the United States hereby requests it.

U.S. STATEMENT OF INTEREST, No. 16-6440-EJD                                                                                                1

enforcement of the FHA.[2]  It should be noted that HUD has filed an administrative complaint against Facebook for conduct similar to that alleged in the First Amended Complaint (ECF No. 28), alleging violations of the FHA.  *See* U.S. Department of Housing and Urban Development, "HUD Files Housing Discrimination Complaint Against Facebook," https://www.hud.gov/press/press_releases_media_advisories/HUD_No_18_085 (last visited Nov. 16, 2018).  In addition, the Department of Justice recently filed a statement of interest in another pending case involving Facebook that raises similar issues.  *National Fair Housing Alliance v. Facebook, Inc.*, No. 1:18-cv-02689-JGK, ECF No. 48 (S.D.N.Y. Aug. 17, 2018).

## I. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THAT THE COMMUNICATIONS DECENCY ACT DOES NOT CONFER IMMUNITY BECAUSE FACEBOOK ACTED AS A CONTENT PROVIDER

Under the Communications Decency Act (CDA), an interactive computer service such as Facebook is immune from liability for the third-party content it publishes.  However, this grant of immunity does not apply if the interactive computer service is also an "information content provider," meaning that it is "responsible, in whole or part, for the creation or development of" the content.  47 U.S.C. §§ 230(c)(1), (f)(3); *see also Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2007) (en banc); *Carafano v. Metrosplash.com, Inc*., 339 F.3d 1119, 1123 (9th Cir. 2003).

Plaintiffs allege that Facebook is responsible, at least in part, for the creation or development of such content, and materially contributed to its illegality.  *See, e.g.,* ECF No. 28, ¶ ¶ 29-57.  Accordingly, it would not be appropriate to find, on a motion to dismiss, that the CDA's immunity provision applies to Facebook. These allegations are distinct from cases in which Facebook users posted information of their own accord and Facebook failed to police that information, or policed it in a way that the plaintiff

---

[2] The United States takes no position on the merits of the Plaintiffs' claims, including claims under the FHA.  Nor does the United States take any position on the truthfulness of the Plaintiffs' allegations, or concede that the Plaintiffs' allegations fully describe the extent of the targeting Facebook implements.

found offensive; that is precisely what the CDA was intended to immunize.  *See, e.g., Klayman v. Zuckerberg,* 753 F. 3d 1354 (D.C. Cir. 2014) (Facebook immune from liability for information user posted on website); *Carracioli v. Facebook, Inc.,* 167 F. Supp. 3d 1056, 1064-66 (N.D. Cal. 2016) (Davila, J.) (same), *aff'd,* 700 Fed. Appx. 588 (9th Cir. 2017), *cert. denied,* 138 S. Ct. 1027 (2018); *Sikhs for Justice v. Facebook, Inc.,* 144 F. Supp. 3d 1088, 1092-96 (N.D. Cal. 2015) (Koh, J.) (Facebook immune from liability for blocking access to information user posted on website), *aff'd*, 697 Fed. Appx. 526 (9th Cir. 2017); *cf. Carafano,* 339 F.3d 1119 (dating website immune from liability for false profile created by user).

In *Roommates.com*, the Ninth Circuit interpreted the CDA's immunity provision in the context of a FHA lawsuit against a website that matched people renting out spare rooms with those looking for a place to live.  Anyone wishing to post on the website was required to state, *inter alia,* the sex and familial status of the desired tenant.  Roommate.com, the operator of the website roommates.com, then used these preferences to determine which postings were shown to which users of the website based on each user's selections through use of drop-down menus and pre-populated lists, similar to the tools provided by Facebook.  *See* 521 F.-3d at 1161-62, 1165-66.  The Ninth Circuit found that the website in *Roommates.com* was not entitled to CDA immunity to the extent it elicited information about protected characteristics and then used that information to determine whether other users would be allowed to see, or be prevented from seeing, those postings based on advertiser preferences.  *Id.* at 1165-72.  The court explained that an entity is responsible for the "development" of content "in whole or in part" if the entity "contributes materially to the alleged illegality of the conduct."  521 F.3d at 1168.  The Ninth Circuit reasoned that "[t]he CDA does not grant immunity for inducing third parties to express illegal preferences."  *Id.* at 1165.[3]

---

[3] In a later opinion, the Ninth Circuit clarified that the FHA did not apply to individuals advertising to share a dwelling with another person. *See Fair Housing Council v. Roommate.com*, 666 F.3d 1216, 1220 (9th Cir. 2012) ("There's no indication that Congress intended to interfere with personal relationships *inside* the home. Congress wanted to address the problem of landlords discriminating in the sale and rental of housing, which deprived protected classes of housing opportunities.") (emphasis original).

U.S. STATEMENT OF INTEREST, No. 16-6440-EJD                              3

The *Roommates.com* court noted, however, that the website featured an "Additional Comments" section, where housing providers and seekers could write whatever additional information they wanted to include about their tenant preferences, and the website exercised no editorial control over those comments. As to those "Additional Comments," the court found that Roommate.com was entitled to CDA immunity, because it played no role in developing any of that content, and merely provided a "neutral tool" through which users could express themselves if they so chose. 521 F.3d at 1173-75. In this respect, the website was simply acting as a publisher, similar to the defendant in *Carafano. See* 521 F.3d at 1171-72 (discussing *Carafano*).

A single website can therefore be an interactive computer service in some respects, and thus entitled to CDA immunity, but an information content provider in others, and thus not immune:

> A website operator can be both a service provider and a content provider: If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is "responsible, in whole or in part" for creating or developing, the website is also a content provider. Thus, a website may be immune from liability for some of the content it displays to the public but be subject to liability for other content.

*Roommates.com*, 521 F.3d at 1162-63 (footnote omitted).

Following *Roommates.com,* courts in this District have denied CDA immunity to websites (including Facebook) that took information provided by users and utilized it to create content, such as email solicitations or advertisements. In *Perkins v. LinkedIn Corp.,* the CDA did not immunize LinkedIn from liability for various state law violations based on email solicitations sent to users' contacts, where LinkedIn took information provided by users and sent emails to their contacts soliciting them to join the website, because such "harvesting" constituted content development. 53 F. Supp. 3d 1222, 1246-49 (N.D. Cal. 2014) (Koh, J.). And in *Fraley v. Facebook, Inc.,* the CDA did not immunize Facebook from liability for unlawful misappropriation based on advertisements that took users' friends' activity on the website and published it as endorsements of products or services, because Facebook

thereby created and developed commercial content.  830 F. Supp. 2d 785, 801-03 (N.D. Cal. 2011) (Koh, J.).

Courts in this District have also applied *Roommates.com* to distinguish between websites whose actions do and do not materially contribute to the alleged misconduct.  For instance, in *Swift v. Zynga,* the CDA did not immunize Zynga, an online game network, from liability for allegedly fraudulent "special offers" from Zynga's business partners.  No. C 09-05443, 2010 WL 4569889 at *5-*6 (N.D. Cal. Nov. 3, 2010) (Armstrong, J.).  Users who engaged in the special offer transactions received virtual currency from Zynga.  *Id.* at *1.  The court noted, *inter alia,* that Plaintiff alleged Zynga materially contributed to the allegedly fraudulent activity by creating demand for virtual currency, and then using that demand to lure users into the special offer transactions.  *Id.* at *5.

On the other hand, in *Goddard v. Google,* the CDA immunized Google from liability for allegedly fraudulent advertisements that used the keyword phrase "free ringtone."  640 F. Supp. 2d 1193, 1197-99 (N.D. Cal. 2009) (Fogel, J.).  The plaintiff alleged that Google provided its advertisers with a tool that suggested keywords based on the advertiser's input into a blank field, the tool disproportionately suggested the use of the phrase "free ringtone" to advertisers, Google disproportionately suggested the use of the same phrase to users of its web search engine, and that phrase was associated with fraudulent advertisements.  *Id.* at 1197.  The court rejected plaintiff's argument that Google materially contributed to the fraudulent advertisements.  *Id.*  Instead, Google had provided a neutral tool to its advertisers, and "[p]laintiff's allegations, if true, would not establish that Google did anything to encourage the posting of false or misleading [content]."  *Id.* at 1198.  The CDA thus immunized Google from any duty to police the content of third party advertisements that used the "free ringtone" phrase suggested by Google's tool.  *See id.* at 1197-99.

Facebook seeks to distinguish *Roommates.com* on the ground that Roommate.com required users to post certain data, but Facebook supposedly does not. ECF No. 34 at 23.[4]  That attempt to distinguish *Roommates.com* is unpersuasive because it ignores several of the Plaintiffs' allegations.  The First Amended Complaint alleges that Facebook views, collects, and mines its users' personal data and

---

[4] Page numbers refer to the page number in the ecf header.

U.S. STATEMENT OF INTEREST, No. 16-6440-EJD                                                                 5

automatically designates and profiles the users based on that data. *Id.* at ¶¶ 39-41; *see also Roommates.com*, 521 F.3d at 1166 ("When a business enterprise extracts such information from potential customers as a condition of accepting them as clients, it is no stretch to say that the enterprise is responsible, at least in part, for developing that information."). Plaintiffs' allegations are similar to those in *Roommates.com,* in which the website allegedly "force[d] users to . . . provide information that other clients can use to discriminate unlawfully." 521 F.3d at 1166 n.19; *see* ECF No. 28 ¶¶ 37-41. In the present case, Facebook allegedly decides which advertisements to show its users based on information Facebook mines from the users. ECF No. 28 ¶¶ 50-51. As explained in *Roommates.com,* "[b]y requiring subscribers to provide the information as a condition of accessing its services," a website "becomes much more than a passive transmitter of information provided by others; it becomes the developer, at least in part, of that information" and can therefore be held liable as a developer of that content notwithstanding the CDA. 521 F.3d at 1166.

Applying these principles to the present case, the United States respectfully submits that the Court should not grant CDA immunity to Facebook at the motion to dismiss stage. Similar to the defendants in *Roommates.com, Perkins* and *Fraley,* Facebook is alleged to have taken and organized information provided by its users and utilized it for targeted advertising. Specifically, Facebook is alleged to have taken and organized information related to race and national origin to help third parties create targeted advertisements that exclude users based on those protected characteristics. ECF No. 28 ¶¶ 31-41. And similar to the defendants in *Roommates.com* and *Swift,* Facebook is alleged to have materially contributed to the misconduct. *E.g.,* ECF No. 28 ¶¶ 147-49. There is, of course, no law against advertising free ringtones, and therefore nothing wrong with Google suggesting that phrase to advertisers in *Goddard*. In contrast, the FHA prohibits housing advertisements that discriminate on the basis of various protected categories, including, *inter alia,* sex, familial status, race, and national origin. 42 U.S.C. § 3604. Thus, the CDA did not immunize the website in *Roommates.com* from requiring its users to provide information about sex and familial status preferences, and then using it to determine which postings were shown to which website users. 521 F.3d at 1161-72. As the Ninth Circuit explained, "[u]nlawful questions solicit (a.k.a. 'develop') unlawful answers," *id.* at 1166, and "[t]he

CDA does not grant immunity for inducing third parties to express illegal preferences." *Id.* at 1165; *see also id.* at 1171 ("even if the data are supplied by third parties, a website operator may still contribute to the content's illegality and thus be liable as a developer") (footnote omitted).

Similarly, the CDA does not immunize Facebook for materially contributing to the alleged illegality, namely excluding users from seeing ads based on protected characteristics. First, like *Roommates.com*, Facebook allegedly solicits discriminatory preferences through drop-down menus and other tools that offer advertisers discriminatory options. ECF No. 28 ¶¶ 33-38. Second, Facebook allegedly mines its users' information and activity for data about their race, and national origin, and other protected characteristics, which is the touchstone in making discriminatory targeting possible. *Id.* at ¶¶ 39-41. And third, Facebook is not entitled to the protection of the CDA because it is Facebook that ultimately decides for each ad which users will see it and which users will not. *See, e.g., id.* at ¶¶ 50-51. If Facebook engaged in this conduct, it was not simply providing its advertisers with a neutral tool or a blank slate to express their own content; it was materially contributing to an alleged violation of the FHA. Unlike in *Goddard,* Plaintiffs' theory of liability in this case would not impose a duty on Facebook to police the content of an advertisement to determine whether it was illegal. Instead, the alleged illegality is in Facebook's role in excluding certain groups from viewing that content, similar to the conduct in *Roommates.com* that was not immunized by the CDA.

## II. CONCLUSION

For all of the foregoing reasons, Plaintiffs' claims under the FHA should not be dismissed on CDA immunity grounds.

Respectfully submitted,

ALEX G. TSE
United States Attorney

Date: November 16, 2018              /s/                .
SARA WINSLOW
Assistant United States Attorney
Attorneys for Federal Respondents